[L. A. No. 6064. Department Two.—August 3, 1920.]

## LORDY ROLLAND, Appellant, v. PEARL MORGAN PORTERFIELD, Executrix, etc., Respondent.

[1] APPEAL—FINDINGS—CONFLICT OF EVIDENCE.—The findings of the trial court upon conflicting evidence are conclusive, and all reasonable inferences are to be indulged to support the findings.

[2] EVIDENCE—EXPERT TESTIMONY—WEIGHT.—There is no legal distinction between expert testimony and evidence of other character, and when there is a conflict between scientific testimony and testimony as to the facts, the jury, or trial court, must determine the relative weight of the evidence.

[3] ID.—FALSE STATEMENTS—CREDIBILITY OF WITNESS—QUESTION FOR TRIAL COURT.—It is exclusively within the province of the trial judge to determine to what extent the falsity of a part of the testimony of a witness affects the credibility of other statements of the same witness concerning contemporaneous occurrences.

[4] PROMISSORY NOTE—FORGERY—FINDING SUPPORTED BY EVIDENCE.—The finding in this action that the promissory note upon which recovery was sought was not executed by defendant's testate is justified by the evidence.

[5] PAYMENT—PRESUMPTION OF MONEY DUE.—It is a presumption that money paid by one to another was due to the latter, and such a presumption is satisfactory if uncontradicted.

APPEAL from a judgment of the Superior Court of Los Angeles County. Dana R. Weller, Judge. Affirmed.

The facts are stated in the opinion of the court.

---

2. Weight of expert testimony generally, note, 42 L. R. A. 753. Weight of expert opinions as to handwriting, notes, 42 L. R. A. 711; L. R. A. 1918D, 642.

E. E. Rogers and Richard Kittrelle for Appellant.

John G. Harrah and Rush M. Blodget for Respondent.

LENNON, J.—This action was brought by plaintiff against the executrix of the estate of Alfred E. Blake, deceased, to recover the sum of five thousand five hundred dollars. The complaint contains two counts. The first count is based upon a promissory note for five thousand dollars, alleged to have been "made, executed and delivered" by decedent; the second count seeks to recover the sum of five hundred dollars, alleged to have been loaned to decedent by plaintiff. The trial court rendered judgment in favor of the defendant and against the plaintiff on both counts of the complaint, and plaintiff appeals upon the ground that the findings and judgment of the trial court are not supported by the evidence. The position of appellant is predicated upon the proposition that there is no conflict whatever in the evidence, and that all of the evidence supports the allegations of the complaint.

The promissory note for five thousand dollars is written on the back of an old photograph of the mother of decedent and is in the following words:

"<i>July 13</i>,
"1917

"*I, Alfred E. Blake,* do hereby acknowledge a debt for loans and very kind services, from Lordy Rolland to me, the debt I owe is $5,000 thousand dollars gold American coin to be paid at my death. *Alfred E. Blake.*"

It is an admitted fact in the case that the words above italicized are in a different handwriting from that of the rest of the note. In support of the allegations of the execution and delivery of this note, two witnesses testified that the following events occurred in their presence. On the evening of July 13, 1917, the date of the note, the witnesses were, together with decedent, at the home of plaintiff. Decedent requested a piece of paper, pen, and ink, which were brought. Instead of using these, however, he took up the photograph of his mother, which was standing on the table, removed it from its frame, and, after erasing, with a moistened handkerchief, some writing on the back of the photograph, handed it to plaintiff with directions to write on the back thereof at his dictation. When plaintiff had finished writing, decedent

signed his name on the back of the photograph, returning it
to plaintiff with instructions to keep it. It was also stated
that decedent did not request plaintiff to do the writing until
he had himself started to write and found there was insuffi-
cient ink in his fountain-pen, thus accounting for the first
few words of the note in decedent's handwriting. One of
these witnesses, Clinton Marr, a boy employed to wheel de-
cedent about in a wheel-chair, testified that, about a month
later, plaintiff gave him the same picture, which had, in the
meantime, been replaced in its frame, and told him to take
it to decedent. According to the further testimony of this
witness, decedent, upon receiving the photograph, called
plaintiff on the telephone, telling her that she should have
kept the picture, because it was her only protection, and that
she must come over and get it. The picture remained at
the home of decedent until his death, October 31, 1917.
Thereafter it was given by defendant to plaintiff upon the
latter's request. Three other witnesses testified that decedent
had told them, at different times, that he had borrowed quite
a sum of money from plaintiff and that he had given her
a note therefor. One of these witnesses stated that plaintiff
was worried about some loans she had made to decedent,
and, at her suggestion, he mentioned the matter to decedent.
During the ensuing conversation, so the witness stated, de-
cedent said that he had borrowed five thousand dollars from
plaintiff but that she was protected by a note. In response
to an inquiry from the witness as to why decedent had bor-
rowed money from the plaintiff when he had property of his
own, the answer of decedent was, as quoted by the witness:
"Well, you borrow it from the bank, something happens to
me if this gangrene sets in on me again, they will take my
property and everything away from me; that is the reason.
Why should I go to the bank and borrow money when I have
friends to help me out of my difficulty."

The above testimony in favor of plaintiff may be resolved
into the three following fundamental factors, namely: (1)
that two witnesses saw plaintiff write on the back of the pho-
tograph on July 13, 1917, in the presence of decedent and
at his dictation; (2) that thereafter the same witnesses saw
decedent sign his name on the back of the photograph and de-
liver the same to plaintiff; (3) that decedent made state-
ments to certain persons that plaintiff had loaned him five

thousand dollars and that she was protected by a note from him.

[1]   As stated in *Hoppe* v. *Robb*, 1 Cal. 373, and repeated in nearly every subsequent volume of the California Reports, the findings of the trial court upon conflicting evidence are conclusive, and all reasonable inferences are to be indulged to support the findings. It therefore remains to be determined whether there was any conflicting evidence on these salient points to support the finding of the trial court that: "It is not true that within the county of Los Angeles, state of California, on the thirteenth day of July, 1917, or at any other place, or at any other time, or at all, that the said decedent, Alfred E. Blake, made, executed, and delivered, or made, executed, or delivered, his promissory note in words and figures as set out in paragraph II of plaintiff's complaint in this action."

In behalf of defendant, a handwriting expert testified, giving in full the reasons upon which his opinion was based, that the words above italicized could not have been written on July 13, 1917, and that they had, in his opinion, been written approximately ten years ago. In derogation of this testimony appellant cites the statement in *Grigsby* v. *Clear Lake Water Co.*, 40 Cal. 405, to the effect that expert witnesses "are generally but adroit advocates of the theory upon which the party calling them relies, rather than impartial experts, upon whose superior judgment and learning the jury can safely rely." [2]   Whatever the individual opinion as to the value of expert testimony, it has been clearly settled in this state that, as regards the preference or weight to be given the testimony in any particular case, the law makes no distinction between expert testimony and evidence of other character, and that, when there is a conflict between scientific testimony and testimony as to the facts, the jury, or trial court, must determine the relative weight of the evidence. (*Estate of Blake*, 136 Cal. 306, [89 Am. St. Rep. 135, 68 Pac. 827]; *Watson* v. *Watson*, 58 Mich. 507, [25 N. W. 497].) Moreover, the note itself, which was offered and received in evidence, affords, by reason of the relative position and condition of its parts, intrinsic evidence amply sufficient to warrant a person, even in the absence of any scientific testimony on the question, in concluding, from ordinary observation, that the name of decedent and the words "July 13" were

written on the back of the photograph before the rest of the writing was placed there.

Appellant contends that, in view of the fact that there is no dispute that the signature appearing on the back of the photograph is the signature of decedent, and in view of the direct testimony that decedent delivered the note to plaintiff in the presence of two witnesses after the plaintiff had written thereon, the note must be held binding upon the estate of decedent and the time when the signature was placed on the back of the photograph is immaterial. This assumes that the testimony as to the delivery of the note under the above-mentioned conditions is uncontradicted and entirely trustworthy, which is not the case. [3] If the evidence adduced by defendant as to the relative date of the signature of decedent was sufficient, in the mind of the trial judge, to disprove the direct and positive statements of the two witnesses in behalf of plaintiff that they saw decedent sign his name on the back of the photograph under the described circumstances, it was exclusively within the province of the same judge to determine to what extent the falsity of this part of the testimony of the two witnesses affected the credibility of the other statements of the same witnesses concerning contemporaneous occurrences, namely, the writing by plaintiff at decedent's direction and the delivery of the note to plaintiff by decedent. (Code Civ. Proc., sec. 2061, subd. 3; *Robinson* v. *Robinson,* 159 Cal. 203, [113 Pac. 155].) Furthermore, the testimony of plaintiff's witnesses on this phase of the case is not entirely uncontradicted by defendant's witnesses, for a witness for defendant testified that, four nights before decedent's death, she examined this particular photograph, among others on decedent's desk, and, although she had the picture out of its frame and looked at the back of it, she noticed no dark writing, such as that claimed to have been written by plaintiff, but only light writing, such as the name of decedent. She also testified that all of the other pictures of decedent which she saw at that time bore his name on the back, and that her attention would have been attracted by any heavy writing such as that now appearing on this photograph. Counsel for appellant observe that this testimony is indefinite and unsatisfactory, in that this witness did not testify that there was, in fact, no writing on the back of the photograph other than the name of decedent. It may be

pointed out, in reply, that the testimony in behalf of plaintiff
in identification of the handwriting other than decedent's was
equally indefinite and uncertain, for there was no testimony
that the words claimed to have been written by plaintiff and
now appearing on the back of the photograph were the ones
which were written at decedent's dictation. On the other
hand, both of plaintiff's witnesses who claim to have seen
the delivery of the note testified that they did not hear what
decedent dictated to plaintiff and that they never saw what
was written by plaintiff. One of these witnesses stated that
she did not know whether or not the writing which is now
on the back of the photograph is the same writing that was
there when she saw decedent sign his name; the testimony
of the other witness is silent on this point. There must also
be taken into consideration the testimony of defendant that
her attention was not called to the writing on the back of
the photograph at the time that plaintiff asked defendant
for the picture, but that, subsequent to decedent's death and
a few days after she had given the photograph to plaintiff,
the latter for the first time showed her the writing on the
back thereof and, upon being told by defendant that it was
not in decedent's handwriting, said: "I know it is not; I
have just written that. . . . It is just a copy of what was
on there."

In contradiction of the testimony of witnesses as to state-
ments made by decedent that he had given a note to plaintiff
for money borrowed by him, there stands the testimony of
defendant that decedent had stated to her that he did not
owe anyone a cent and that there were no debts against his
estate.

[4] From the foregoing analysis of the evidence adduced
upon the whole case it is evident that the finding of the trial
court, if not unavoidable, was at least justifiable.

Upon the issue of the loan of five hundred dollars there
was simply the testimony of the boy, Clinton Marr, that,
when plaintiff told him to take the photograph to decedent,
she also gave him a handkerchief, which, plaintiff stated to
witness, contained five hundred dollars. When this was de-
livered to decedent, he remarked that he had not seen so
much money for a long time. There is an entire absence of
testimony as to the purpose for which this money was sent
to decedent. [5] "It is a presumption that money paid

by one to another was due to the latter," and such a presumption is satisfactory if uncontradicted. (Code Civ. Proc., sec. 1963, subd. 7; *Fox* v. *Monahan,* 8 Cal. App. 707, [97 Pac. 765].) The testimony of witnesses as to decedent's statements that he had borrowed money from plaintiff cannot be considered as relating to the five hundred dollar loan, for they all include the statement that decedent had given plaintiff a note for the money borrowed, whereas the five hundred dollar loan is claimed to have been unsecured by note. Obviously these statements were introduced in support of the action on the five thousand dollar note. Even if this evidence could be considered as relating to the five hundred dollar loan, it is contradicted by the testimony of defendant above referred to, namely, that decedent told her he owed nothing.

The evidence supports the findings, which, in turn, support the judgment. The judgment is affirmed.

Wilbur, J., and Sloane, J., concurred.