[L. A. No. 7386. In Bank.—February 2, 1924.]

## EMIL HIRSHFELD, Appellant, v. ROSE DANA, Respondent.

[1] EVIDENCE—NONRESPONSIVE ANSWER—MOTION TO STRIKE OUT.— The only one who can make an objection that an answer to a question asked of a witness is not responsive is the party who asked the question, if the answer is otherwise admissible.

[2] ID.—ANSWER STRICKEN OUT—RESTORATION—INSTRUCTION.—Where an answer to a question in a deposition is stricken out but the witness in a subsequent answer embodies it, the court should restore the answer that was stricken out, and it is error for the court to instruct the jury to disregard the evidence thus stricken out.

[3] ID.—DEPOSITION — CERTIFICATE OF NOTARY.—An objection to the introduction in evidence of a deposition on the ground that the certificate of the notary certified that the deponent had read the deposition instead of certifying that it had been read to him is properly overruled.

[4] ID.—WEIGHING EVIDENCE—APPEAL.—While it is not the province of the supreme court in appraising error, under the constitutional rule of decision on appeal, to weigh the evidence as would the

triers of the fact, it is required to some extent to weigh the evidence and form conclusions upon its weight.

[5] ID.—EXCLUSION OF EVIDENCE—MISCARRIAGE OF JUSTICE—PROMISSORY NOTES.—In an action upon promissory notes where it is readily conceivable that the erroneous exclusion of certain statements made by the alleged maker of the notes might have been directly responsible for the verdict in her favor, it will be held that the error resulted in a miscarriage of justice, for which the judgment must be reversed.

[6] ID.—EXECUTION OF NOTES—EVIDENCE—ESTOPPEL.—In an action upon promissory notes, where the alleged maker denied their execution by her, evidence of her admissions tending to show the execution was admissible, and the fact that it was relevant to the issue of estoppel, did not deprive it of its relevancy to the other issue.

[7] ID. — PRODUCTION OF LETTERS — FOUNDATION. — In this action on promissory notes it is held that there was no foundation laid for the production of certain letters and that an order therefor was in violation of the provisions of article I, section 19, of the constitution, and section 1000 of the Code of Civil Procedure.

[8] ID.—INSTRUCTION—EXPERT TESTIMONY.—It is the duty of the jury to consider and weigh the opinions of expert witnesses with the other evidence in the case, and then determine on all the evidence where the truth lies; and an instruction to the jury "that the opinions of the witnesses as experts are merely advisory and not binding on the jury" is erroneous, as it may detract from the effect of the expert evidence and lead the jury to believe that it is optional with them whether to weigh such testimony as they would that of any other class of witnesses.

[9] ID.—INSTRUCTION ON FACTS—CONSTITUTIONAL LAW.—Subdivision 4 of section 2061 of the Code of Civil Procedure is unconstitutional, and an instruction in its language is an instruction on the facts, but the giving or refusal of such an instruction will not warrant a reversal, as it states mere commonplace matter within the general knowledge of the jury.

[10] ID.—EVIDENCE—ORAL STATEMENTS.—In an action upon promissory notes, evidence of statements made by the payee to a witness that the maker of the notes should pay them, and if she did not he would expose her in matters reflecting on her character, is admissible as independent evidence, without regard to impeachment of the witness, and to prove what the party said although he denied making the statements.

[11] ID. — EVIDENCE — FOUNDATION. — In an action upon promissory notes, conversations between the alleged maker and payee of the notes going to the merits of the question of the responsibility of

---

8. Weight of testimony by experts, note, 4 Ann. Cas. 986.

the alleged maker for the notes are admissible without any foundation as impeachment evidence.

[12] ID.—INITIALING NOTES—INTENT.—In an action upon promissory notes, the execution of which are denied by the defendant, the reason as to why the latter initialed the notes on a certain occasion is admissible as substantive evidence of the fact.

[13] ID. — HANDWRITING — CROSS-EXAMINATION. — In such an action, where a witness testified as to the handwriting of the alleged maker of the notes, while the matter of not allowing the witness to make a comparison between the signatures on the notes, which he testified were not in the defendant's handwriting, and certain exhibits admitted to be in her handwriting, was a matter largely resting in the discretion of the trial court, the court should have allowed the witness to be sufficiently interrogated as to his opinion.

APPEAL from a judgment of the Superior Court of San Luis Obispo County. T. J. Norton, Judge. Reversed.

The facts are stated in the opinion of the court.

Lucius L. Solomons and Fred C. Peterson for Appellant.

Paul M. Gregg, Charles N. Douglas and Albert Nelson for Respondent.

LAWLOR, J.—Plaintiff sued to recover from defendant the amount of four promissory notes in varying sums. The complaint is in four counts, each setting out as a cause of action a promissory note. The first note was for five hundred dollars, dated January 19, 1918; the second for six hundred dollars, dated February 4, 1918; the third for one thousand dollars, dated February 4, 1918, and the fourth for seven hundred dollars, dated June 20, 1918. It is alleged in each count that defendant made, executed, and delivered for a valuable consideration the said note to the payee thereof. William J. Murphy, that it was by the payee indorsed, assigned, and transferred before maturity to the plaintiff. The prayer asks for judgment for the total amount due on each and all of the said four notes. Defendant filed a verified answer and denied that she made, signed, executed, or delivered any of the said notes, or that they were made for a valuable consideration; that they were genuine; or that she authorized any person to sign her name, or to make,

or to execute the said notes or to deliver them to William J. Murphy. It is also denied that William J. Murphy indorsed, assigned, transferred, or set over to plaintiff any promissory note executed by defendant.

The case was tried by jury. The verdict and judgment were in favor of defendant. A motion for a new trial based on the insufficiency of the evidence to justify the verdict, that the verdict is against law and errors of law occurring at the trial and excepted to by the plaintiff, was interposed by plaintiff and denied. Plaintiff appeals under the alternative method and relies for reversal on asserted errors in the rulings on evidence and in the instructions given at the request of respondent.

Appellant's position on the trial was that by respondent initialing the notes on the face thereof after they passed into his possession and by declarations and conduct she was estopped to deny their execution and her liability. Estoppel was not pleaded but it was litigated on the trial, and in addition to the evidence of the notes and the acts and declarations of the parties expert testimony as to the signatures was received *pro* and *con.* Respondent also offered evidence tending to show the absence of intention to admit the genuineness of the notes or to acknowledge her liability when she initialed them. The evidence will be sufficiently described in the discussion of the points presented on appeal.

1. Appellant contends: ''The court erred in excluding portions of the deposition of the witness, Isaac C. Scharff.'' The point to the contention is that the excluded evidence tended to contradict respondent's testimony to the effect that she did not execute the notes in controversy, nor initial them in consideration of the extension of the time of payment thereof. Scharff had testified he held certain notes of respondent which were overdue and upon which he was demanding payment. We quote from the record:

''Q. Did you have any conversation with her at any one of these interviews with reference to any other notes than those notes you have just mentioned?

''A. Yes, sir, the second time when she called at my office I demanded payment. She stated that she had come from Mr. Hirshfeld's office in the Claus Spreckels Building, and stated that he had extended her some time on the payment of the notes he held and wanted to know if I couldn't do the

same thing, and I told her the notes were past due and we desired to have our notes paid.

"Mr. Nelson (interjecting): Now, we move to strike out as not responsive to the question all after the words 'yes, sir' in that answer. . . .

"The Court: Strike it out.

"Mr. Nelson: I would like the Court to instruct the jury that anything stricken out is not for their consideration.

"The Court: Yes. When any testimony is ordered stricken out by the Court, the evidence is not before the jury and it is to be entirely disregarded by them and it is not to be considered by them as evidence in the case.

"Mr. Peterson (continuing to read the deposition): Q. Did she say anything further in that interview on the subject of Mr. Hirshfeld and the notes that he had extended payments on, other than you have just mentioned?

"Mr. Nelson (interjecting): We object to that as assuming to be in evidence that which is not, incompetent, irrelevant and immaterial. . . .

"Mr. Nelson: The only thing in the record is 'yes, sir' in answer to this other question, and it assumes that to be in evidence which is not. There is nothing in here about Mr. Hirshfeld. . . .

"Mr. Nelson (supplementing objection): And no proper foundation.

"The Court: Overruled.

"A. No.

"Q. Did you ever have any other conversation with her on the subject of Mr. Hirshfeld? A. No, not that I can recollect. Yes, in the month of December, I think it was December, when she came up and again stated that Mr. Hirshfeld was going to extend the time and wanted me to do it also, because she had so many notes she had to take care of. I told her again I couldn't help what Mr. Hirshfeld or anybody else had done in the matter, the party I represented wanted the money paid, which was done in January, 1919.

"Mr. Nelson (interjecting): We move to strike out all of the answer after the word 'December' as not responsive to the question. The question is 'Did you ever have any other conversation with her on the subject of Mr. Hirshfeld?' answer, 'No, not that I can recollect. Yes, in the month of December, I think it was December.' Now, we

ask that all of that answer after that word 'December,' appearing for the second time be stricken out as not responsive to the question.

"Mr. Peterson: Here is a case, if the Court please, where counsel was present, where he had a right to make that sort of an objection if he desired and it could have been cured at the taking of the deposition by a further question and we submit that the question of not responsive cannot be raised in that manner.

"The Court: Well, I don't understand it is waived, strike it out.

"Mr. Nelson: All after the word 'December' goes out. . . . ''

[1] Section 2032 of the Code of Civil Procedure provides that a deposition is "subject to all legal exceptions." The appellant complains of the striking out of this testimony and states: "It is a fundamental rule of evidence that the only one who can make the objection that an answer is not responsive is the person who asks the question." Appellant's contention is supported by the decision of the supreme court of Michigan in *Merkle* v. *Bennington Tp.*, 58 Mich. 156, 163 [55 Am. Rep. 666, 24 N. W. 776]. The opinion was written by Mr. Justice Cooley and upon that subject he states the rule as follows: "The defense, in attempting to meet the case of the plaintiff as to the bridge being out of repair, called Conrad Dench as a witness and proved by him that he crossed the bridge within the thirty days preceding the time of injury. He was then asked, 'Did you notice the planking?' and replied, 'When I went across, it was all right.' The answer on motion was stricken out. The ruling is now supported in argument on the grounds—first, that the answer was not responsive to the question; and, second, it was an expression of opinion, and for that reason not proper. The objection that an answer is not responsive, is one to be made by the party who puts the question; not by his antagonist. If the answer is in itself proper evidence, the party who is examining the witness has a right to take and retain it if he chooses to do so. His doing this merely saves him the trouble of putting another question to draw it out. But in this case it is only on a technical construction that the answer could be held not responsive. The witness was fairly notified by the question put that the purpose was to

prove by him the condition of the planking as he found it, and he answered at once that the planking was all right. . . . ''

The rule is similarly stated by the supreme court of Iowa, *In re Will of Dunahugh,* 130 Iowa, 692, 694, 695 [107 N. W. 925], as follows: ''III.  During the examination in chief of a witness for contestant, counsel for proponent repeatedly interrupted with an objection that the answer of the witness was not responsive to the question, and such objections were sustained.  It is insisted that herein was error, and this for the reason that no one but the party conducting the examination of a witness can be heard to object to an answer on the ground that it is not responsive.  We agree that the rule is as contended for by counsel.  If the evidence given by a witness is competent and material, the examining party may adopt it even though not strictly in response to the question propounded.  'The objection that an answer is not responsive is one to be made by the party who does the questioning and not by his antagonist; if the answer is proper evidence, the party who is examining the witness has the right to take and retain it if he desires so to do.'  (*Merkle* v. *Bennington Tp.,* 58 Mich. 156 [55 Am. Rep. 666, 24 N. W. 776].)''

See, also, *Zenor* v. *Smith,* 150 Iowa, 424, 428 [130 N. W. 382], where it is said: ''The answer was not responsive, but that was not a ground for striking it out on defendant's motion, unless it was in itself improper.''

It was declared in *Hamilton* v. *People,* 29 Mich. 173: ''The objection that the answer was not responsive was one which did not concern the prosecution, if it was relevant. The party examining a witness may sometimes object to volunteered and irresponsive statements made by a witness aside from his questions.  But if he is willing to accept the answer, and if it was one he would have had a right to elicit, the opposite party cannot complain.  There are cases, as in *Greenman* v. *O'Connor,* 25 Mich. 30, where the deposition of a witness is taken on settled written interrogatories, when an answer not called for may be objected to by either party for surprise, inasmuch as, if the question had been so put in writing as to call for it, other interrogatories might have been framed accordingly, which might have led to explanation.  But no such difficulty can arise where the witness is examined openly and orally, and where a question calling

for such an answer would have been competent." The Greenman case is cited in Week's Law of Depositions, section 404. (See 9 Cal. Jur., sec. 33, p. 432.)

[2] It is true that the opposing party may move to strike out testimony that is for any reason improper to be admitted, or may move to strike out an irresponsive answer in order that an objection, though not well taken, may be saved, but no such situation is presented by the record in this case. The second question above quoted, referring back as it did to the answer previously given, coupled with the answer thereto, in a sense restored to the record the part ordered stricken out. The court should have ordered the part of the answer restored in view of the fact it was embodied in the question and answer that followed. It was therefore error for the court to instruct the jury to disregard the evidence thus stricken out when it appeared from the deposition that the witness had adopted the answer to the previous question as a part of his answer to the question which was permitted. A somewhat similar situation was considered by the supreme court of Massachusetts in the case of *Conner* v. *Standard Publishing Co.*, 183 Mass. 474, 478 [67 N. E. 596], which the court disposed of in the following manner: "The jury had before them Roger's testimony that he gave orders not to take any more insurance for the plaintiff. We mention this because his counsel seem to assume the contrary in their brief. The answer was first stricken out as not responsive, but in answer to a subsequent question the witness testified that the explanation that he had made covered his answer better than either yes or no. That put the previous answer in evidence."

[3] The respondent does not attempt to justify the action of the trial court in striking out parts of the foregoing answers, but contends that the whole deposition should have been excluded because of a defective certificate. The point made by the respondent is that the certificate of the notary certified that the deponent had read the deposition instead of certifying that it had been read to him. The trial court properly overruled this highly technical objection. (*Higgins* v. *Wortell*, 18 Cal. 331; *Short* v. *Frink*, 151 Cal. 83, 90 [90 Pac. 200].)

[4] It is necessary to consider whether the exclusion of the foregoing evidence calls for a reversal of the judgment.

The constitutional provision includes "the improper admission or rejection of evidence." (Art. VI, sec. 4½.) While it is not our province in appraising error under the constitutional rule of decision on appeal to weigh the evidence as would the triers of the fact, still we are required "to some extent to weigh the evidence and form conclusions upon its weight." (*People* v. *O'Bryan,* 165 Cal. 55 [130 Pac. 1042].)

[5] The principal questions of fact were, first, whether respondent executed the notes in controversy, and, second, whether she initialed them in consideration of an extension of time. It is to be noted that Murphy, who transferred the notes to appellant, did not testify, so that the excluded testimony might have had a vital effect in determining the question of veracity between the parties to the action. In this state of the matter it is readily conceivable that the exclusion of respondent's statements to Scharff that appellant granted her time on the notes he held might have been directly responsible for the verdict. This being so, we are of the opinion that the error resulted in a miscarriage of justice, for which the judgment must be reversed.

We will now consider with reference to a new trial several other points presented on the appeal.

[6] 2. The next ground urged for reversal is that the court erred in admitting any evidence on behalf of the respondent except on the claim of estoppel. We quote from the reply brief of appellant: "We repeat, there was but one issue to be submitted to the jury. Under the evidence as introduced by the plaintiff that question is, 'was the respondent estopped to plead a forgery in this case?' The evidence on the subject of the original execution was irrelevant, incompetent and immaterial on that issue and should have been excluded." Appellant testified that he received each note from the payee, William J. Murphy, before maturity, and for a valuable consideration; that in September, 1918, respondent called upon him in his office and said "she couldn't pay the amount due on those notes at the present time; she wanted a little time for it and she told me she would be able to pay it on the 15th of January, as at that time she expected some money coming in from the crop." The witness further stated that he agreed to the extension of time but "to avoid any further trouble in the future she should acknowledge the signature by signing 'OK' and 'RD'

on each note." According to the evidence a Mr. Franklin
was at his desk in the office at this time but did not see
respondent initial the notes—"he was sitting back of me and
didn't pay any attention to what was going on." The wit-
ness also stated that one morning in October, 1918, he met
respondent on Market Street and she said: "I am going up
to see Mr. Scharff. . . . I am not going to pay your notes
neither, you better collect it from Mr. Murphy." He an-
swered: "Mrs. Dana, how can you ask anything like that
when you acknowledged the signatures and wrote the 'OK'
and 'RD'?" Respondent answered: "I don't care; you
forced me to do that." It appears that a few minutes later
respondent came to his office and as to this interview appel-
lant testified: "Mrs. Dana said, 'Why do you leave me
standing on the street so abruptly?' I said, 'Mrs. Dana,
you made remarks which were very, very uncalled for';
she says, 'You musn't take it—I am so nervous, I don't know
what I am doing; you don't need to be afraid, I signed those
notes and I will pay them.'" This conversation occurred
in the presence of Sidney H. Abrams, who had desk room in
the same office. His deposition was introduced in evidence
in which he stated he overheard respondent say: "'You
seem to be very anxious; is my name not attached to the
notes, ain't I good for it, have you any doubts?' Mr. Hirsh-
feld answered that 'if I had any doubts I would not take
them; but I need my money.'" We have already referred
to the deposition of Isaac C. Scharff. The appellant then
rested.

The first witness called for respondent was Samuel Dana,
her brother-in-law, who testified as one having personal knowl-
edge of her handwriting under subdivision 9, section 1870, and
section 1943, of the Code of Civil Procedure. Appellant ob-
jected to the witness testifying as to respondent's handwrit-
ing upon the ground "we have proven an estoppel on the part
of Mrs. Dana to assert that these notes are forgeries under
the negotiable instrument law," and cites a number of au-
thorities as to the effect of an estoppel when established.
The objection was overruled and the witness testified. Re-
spondent admitted having initialed the notes, but offered the
explanation that it was done at the instance of appellant in
order, as he represented to her, to facilitate the prosecution
of Murphy. It appeared that Murphy had borrowed five

hundred dollars from respondent and three hundred dollars from appellant. Respondent testified she had not in the conversations with appellant said Murphy had forged her signatures to the notes and added: "I believed he had signed these notes." She admitted to appellant the signatures looked like her own, and also stated she wrote the "RD" and appellant the "OK" appearing therewith on each note, but denied she ever admitted their execution or that she ever promised to pay them. The issue of estoppel was only presented by the evidence—to the introduction of which respondent did not object. She claims, however, that as the due execution of the notes was put in issue by the pleadings it was properly submitted to the jury. Her answer to appellant's contentions that the estoppel was established and that no evidence except on that issue should have been admitted is that estoppel was not, but the execution of the notes was pleaded, and, therefore, the evidence on the execution of the notes was properly received. If appellant failed to establish an estoppel, in order to recover he would be required to prove the due execution of the notes. He had in fact already introduced evidence relevant to that issue. The statements of respondent, above quoted, were in the nature of admissions on her part that she had in fact executed the notes. It was, therefore, evidence in behalf of appellant tending to prove the allegation of the complaint that the notes were executed by respondent. The circumstance that this evidence was also relevant to the issue of estoppel did not deprive it of its relevancy to the issue of execution. The issue of execution having been raised by the pleadings, and appellant having introduced evidence tending to prove it, respondent was entitled to introduce evidence to disprove it. If appellant desired to exclude this evidence, he could have offered a stipulation at the trial conceding that the notes were not executed by respondent. This he was apparently not willing to do, and the evidence was, therefore, properly received.

[7] 3. A further ground of error is thus stated: "The court erred in compelling the plaintiff to produce all letters in his possession signed or purported to have been signed by the defendant or by one William J. Murphy."

On the cross-examination of appellant he was asked if he had seen any letters that purported to have been written by

respondent to Murphy. It was represented by respondent that such letters were to be used on the cross-examination of appellant. Appellant answered that he had seen such letters and had given them to his attorney. Appellant's attorney was then called and asked if he had the letters in his possession. He replied he had seen such letters and that they were among the papers in the case. A demand was then made that he produce them and, notwithstanding the objection of counsel for appellant on the ground that until their relevancy or character is specified the court has not power to order them produced, the court directed their production. When the letters were produced they were marked for identification. Respondent did not offer them in evidence and her counsel stated: "The only letters we have we are going to use by way of exemplars possibly, if we go into that question." Appellant claims the order for production was a mere fishing expedition and that respondent "used the opportunity thus afforded her by the order of the court directing the marking of these documents as exhibits and the fact that the papers were then in the custody of the clerk, to determine in her own mind those of the instruments which she would admit as having written and those of the instruments which she would deny as having written." It is clear there was no foundation laid for the production of these letters and the order was, therefore, in violation of the provisions of article I, section 19, of the constitution, and section 1000 of the Code of Civil Procedure.

[8] 4. Appellant contends that portions of the following instructions, proposed by respondent and given to the jury as modified, are erroneous in several particulars and constitute a charge with respect to matters of fact:

1. "(a) The opinions of expert witnesses are entitled to such weight as you deem proper to give them. You may accept or reject such opinions as you may accept as true, or reject as false, any other facts in the case."

"(b) The jury are instructed that the opinions of the witnesses as experts are merely advisory, and not binding on the jury, and the jury should accord to them such weight as they believe from all the facts and circumstances in evidence, the same are entitled to receive."

2. "The opinion of experts who have testified in this cause is testimony which the jury should consider and examine in

connection with all the other testimony in this case, subject to the same rules of credit and disbelief as the testimony of other witnesses.''

3. ''In regard to the weight to be given by you to the testimony of experts called to testify in regard to the signatures of the promissory notes set out in the complaint I instruct you as follows: The law permits, in certain cases, a skilled person to give his opinion in testimony in regard to matters in which he is specially skilled; but *such testimony should be received by you and you should award to it such value as in your judgment it deserves (with great caution)* and you are at liberty to reject it, the same as the testimony of any other witness, if after due consideration you deem it not well founded in fact. And in regard to said signatures, you are at liberty to use your own judgment and knowledge in matters of handwriting, and are not legally compelled to follow the opinion of either of said witnesses. In other words, you should consider their testimony precisely the same as you do any other witness. You are not legally bound to adopt their theory unless you are satisfied that it is correct. If you are satisfied their theory is correct, then it should be adopted, and you should act upon it accordingly.''

4. ''I also instruct you in regard to expert testimony that you are to exercise an independent judgment in this case, giving to such expert testimony such weight only as you deem it is entitled to; such expert testimony does not preclude you from exercising your own judgment upon the subject, and furthermore such expert testimony like all opinion evidence ought to be received by you with scrutiny and (much) caution.''

5. ''Expert testimony is the opinions of witnesses on special subjects, in which they are presumed to have special or unusual knowledge. In general, testimony is to facts only, but one exception to the general rule is expert testimony, which is as to the opinions of the experts. *Such testimony must receive just so much weight and credit as the jury deem it entitled to when viewed in connection with all the evidence, and no more.* Upon a jury rests the responsibility of rendering a correct verdict, and if the testimony of experts is opposed to the jury's conviction, it is their duty to disregard it. Such evidence, as all evidence of opinions, ought

to be considered with careful scrutiny and with (much) caution."

[9] 6. "Witnesses have testified as to certain oral statements they claim that the defendant in this case made in their presence. In considering such testimony I specifically charge you that you must receive such evidence with caution."

It is conceded paragraph (a) of instruction 1 is correct. The phrase in instruction 1 (b) "that the opinions of the witnesses as experts are merely advisory, and not binding on the jury," is claimed to be erroneous. The expression "merely advisory" is not a correct description of the respective functions of the jury and the expert. Their respective functions are entirely independent. When the instruction is analyzed and considered, apart from other instructions, it is open to the objection that it may detract from the effect of expert evidence, in that it might lead the jury to believe it was optional with them whether to weigh such testimony as they would that of any other class of witnesses. It is true the jury were told that the opinion of the expert must be weighed with the other evidence in the case, and if found satisfactory, to follow it, but the statement "is not binding on the jury" may have had a misleading effect. If the statement that the opinion of an expert is not binding on the jury is not considered with the other instructions the phrase could well be misunderstood. Instruction 2 is not questioned. The phrases "you are at liberty to reject it," in instruction 3, and "if the testimony of experts is opposed to the jury's conviction, it is their duty *to disregard it,*" in instruction 5, are lacking in accuracy. The words we have italicized inject a false quantity into the instructions. The jury is to keep such evidence, as it would any other, in mind until the facts are determined. For the italicized words, "they *are presumed to have* special or unusual knowledge," in instruction 5, *"may have"* would meet appellant's criticism. It is the duty of the jury to consider and weigh the opinions of the experts with the other evidence in the case and then determine upon all the evidence where the truth lies. This is not the same as declaring that the jury may disregard the evidence of the expert. All the evidence, including the opinions of the experts, should remain in a state of solution, so to speak, until the facts of

the case are finally determined. Moreover, it is only in criminal cases that the jury is to be satisfied to a "conviction." In civil cases a preponderance of evidence will suffice.

We will later state our views on such cautionary phrases as those contained in instructions 3, 4, 5, and 6.

Appellant cites, in support of his contentions that the court charged the jury as to matters of fact, article VI, section 19, of the constitution, sections 2061 (subd. 4) and 2101 of the Code of Civil Procedure; *Estate of Blake,* 136 Cal. 306 [89 Am. St. Rep. 135, 68 Pac. 827] ; *Estate of Hess,* 183 Cal. 589 [192 Pac. 35] ; *Quint* v. *Dimond,* 147 Cal. 707, 714 [82 Pac. 310] ; *People* v. *Wilkins,* 158 Cal. 530 [111 Pac. 612] ; *People* v. *Hadley,* 175 Cal. 118, 123 [165 Pac. 442].

The constitution provides: "Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law" (art. VI, sec. 19). In connection with the claim that the court invaded the province of the jury in its charge on expert testimony the question is discussed in the briefs whether subdivision 4, section 2061, of the Code of Civil Procedure is in violation of said constitutional provision. That section reads in part as follows: "The jury, subject to the control of the court, in the cases specified in this code, are the judges of the effect or value of evidence addressed to them, except when it is declared to be conclusive. They are, however, to be instructed by the court on all proper occasions: . . . 4. That the testimony of an accomplice ought to be viewed with distrust, and the evidence of the oral admissions of a party with caution."

Subdivision 4 has been considered in a number of cases with reference to the constitutional provision. In *Kauffman* v. *Maier,* 94 Cal. 269, 282 [18 L. R. A. 124, 29 Pac. 481], the court instructed the jury that "the statements of the witnesses as to the verbal admissions of a party should be received by the jury with great caution." It was held the instruction was violative of the constitutional provision and that the error was not obviated by the closing sentence therein, to the effect that it was for the jury to give to the evidence the consideration to which it was entitled. The word "great," characterizing "caution," it will be observed, is no part of the statutory provision. *People* v. *Sanders,* 114 Cal. 216, 237 [46 Pac. 153], however, decided in department

that the phrase "great caution" is correct and should be given on all proper occasions. But see reference to that case in *People* v. *Wardrip,* 141 Cal. 229, 232 [74 Pac. 744]. It was held in *People* v. *O'Brien,* 96 Cal. 171, 179 [31 Pac. 45], that the giving of an instruction proposed by the people in the language of subdivision 4 constituted a charge on a question of fact by in effect telling the jury to discredit the accomplice who was called on behalf of the defendant.

The instruction proposed by the defendant and refused by the court in *People* v. *Bonney,* 98 Cal. 278 [33 Pac. 98], was in the language of subdivision 4, and it was held that as the only evidence which would justify a conviction was the testimony of an accomplice of the defendant the court erred in refusing the instruction. After calling attention to the fact that in *People* v. *O'Brien, supra,* the instruction condemned was given at the request of the prosecution, the court said: "For the court, however, to discredit one of defendant's witnesses before the jury is very different from giving them an instruction in his favor." An instruction given under subdivisions 6 and 7 of section 2061 was held to be erroneous in *People* v. *Cuff,* 122 Cal. 589, 591 [55 Pac. 407], citing *Kauffman* v. *Maier, supra,* and *People* v. *O'Brien, supra.* The court in *People* v. *Rodley,* 131 Cal. 240, 258 [63 Pac. 351], refused to give an instruction proposed by the defendant as to his oral admissions and referring to two of the witnesses by name. Instead, the whole of section 200, 1 Greenleaf on Evidence, was given to the jury. The decision approved *Kauffman* v. *Maier, supra,* but held the defendant would not be heard to complain, since the instruction given was proposed by him. In *People* v. *Wardrip,* 141 Cal. 229, 231 [74 Pac. 744], the defendant proposed and the court refused to give an instruction, "The jury is instructed that, in considering the testimony in this case, they will receive with caution all evidence of the oral admissions of the defendant against himself." It was said that as the former decisions of the court stand, the weight of authority is to the point that the instruction is in violation of the constitutional provision, citing *Kauffman* v. *Maier, supra,* but holding it was not necessary to decide the question, saying: "The proposed instruction states a mere commonplace within the general knowledge of jurors, and we do not think that either the giving or the refusing of such an in-

struction would warrant a reversal.'' In denying the petition for a rehearing it was stated ''that, so far as the statute requires such an instruction ever to be given, it is unconstitutional, for the reason that such an instruction would be in violation of the constitutional injunction against judges charging as to matters of fact. It has frequently been said by this court that the giving of such an instruction will not be held reversible error where, by it, the jury are instructed as to mere commonplace matters within their general knowledge (*People* v. *Wong Bin,* 139 Cal. 60, 65 [72 Pac. 505]; *People* v. *Farrington,* 140 Cal. 656 [74 Pac. 288]), but we are satisfied that a judgment should never be reversed for the refusal on the part of the court to instruct upon matters of fact.''

The instruction proposed by the defendant and refused in *People* v. *Buckley,* 143 Cal. 375, 391 [77 Pac. 169], was held to be objectionable on the grounds that the phrase ''great caution'' was in excess of the language of the statute, and that it was otherwise argumentative. *Kauffman* v. *Maier, supra,* was approved in the opinion and *People* v. *Rodley, supra,* cited. It was pointed out that the authorities relied upon by appellant were all cases where the proposed instruction was limited to the language of the statute. Five justices joined in the above conclusion. Lorigan, J., announced he was not disposed to hold that the giving of an instruction as to verbal admissions is violative of the constitution, and that he is in accord with *People* v. *Wardrip, supra,* ''that such an instruction 'states a mere commonplace within the general knowledge of juries; and we do not think that either the giving or the refusing of such an instruction would warrant a reversal.' '' Beatty, C. J., retracted his concurrence in what was said in response to the petition for a rehearing in *People* v. *Wardrip, supra.* He placed his concurrence in *People* v. *Buckley, supra,* upon the defects in the proposed instruction already indicated, and expressed the view that section 2061 is not unconstitutional, for the reason that the power of the legislature to determine what is or is not competent evidence in civil or criminal cases is unquestionable; that to require the court to instruct the jury on all proper occasions to view the testimony of an accomplice with distrust, or the evidence of the oral admissions of a party with caution, is not to charge the jury as

to matters of fact, "but merely to state the condition upon which the jury is permitted to hear that class of evidence"; that the allowance of such instructions is obligatory in every proper case, and that it is prejudicial error to refuse them when requested by a party against whom such evidence has been given.

The instructions proposed by the defendant and refused in *People* v. *Moran,* 144 Cal. 48, 63 [77 Pac. 777], were not in conformity with the language of subdivision 4, and for that reason Beatty, C. J., who wrote the main opinion, justified the refusal. He again declared that section 2061 is constitutional and that the refusal to give an instruction within the language of subdivision 4 is reversible error. Henshaw, J., concurred with the chief justice, but four of the justices, in concurring in the judgment, adhered to the views expressed in denying the petition for rehearing in *People* v. *Wardrip, supra.* Lorigan, J., who did not act on the petition for rehearing in that case, stated, in concurring in *People* v. *Moran, supra,* that as far as the constitutional point is concerned he did not wish to go further than is stated in *People* v. *Wardrip, supra,* that such an instruction "states a mere commonplace within the general knowledge of jurors; and we do not think that either the giving or refusing of such an instruction would warrant a reversal."

In *People* v. *Ruiz,* 144 Cal. 251, 253 [77 Pac. 907], the defendant proposed and the court refused to give an instruction in the language of subdivision 4. It was said: "The instruction offered is in the language of subdivision 4 of section 2061 of the Code of Civil Procedure, but it was definitely held in *People* v. *Wardrip,* 141 Cal. 229 [74 Pac. 744], that a refusal to give such an instruction is not error." Five of the justices concurred in the decision. Beatty, C. J., in a dissenting opinion, reiterated his former views as to the constitutionality of the section and the necessity of giving an instruction when proposed within the terms of subdivision 4; and that it was a proper occasion for the giving of such an instruction and error to refuse it. In that case the instruction could only have applied to an accomplice of the defendant. We quote from the dissenting opinion: "The trial judge, however, refused the instruction and the ruling is sustained on the authority of *People* v.

*Wardrip,* 141 Cal. 229 [74 Pac. 744]. I concurred in that decision, but have since become convinced that it was erroneous, and in subsequent cases have so stated. (*People* v. *Buckley,* 143 Cal. 375 [77 Pac. 169]; *People* v. *Moran, supra.*) The Wardrip case and the cases in which it has been followed upon this point leave it uncertain whether the refusal of this instruction is sustained upon the ground that section 2061 of the Code of Civil Procedure is unconstitutional, or upon the ground that being constitutional the injunction it lays upon the court may be observed or disregarded at pleasure." Henshaw, J., did not participate in the decision.

We cite other cases which follow the decisions holding that the giving of an instruction in the language of subdivision 4 is violative of the constitution, or that the refusal to give was not error, but that neither the giving nor the refusal to give such an instruction would warrant reversal, as it states mere commonplace matter within the general knowledge of the jury (*Goss* v. *Steiger Terra Cotta etc. Works,* 148 Cal. 155 [82 Pac. 681]; *People* v. *Raber,* 168 Cal. 316, 320 [143 Pac. 317]; *People* v. *Hill,* 1 Cal. App. 414, 417 [82 Pac. 398]; *People* v. *Davenport,* 13 Cal. App. 632, 636 [110 Pac. 318]; *People* v. *Maljan,* 34 Cal. App. 384, 389 [167 Pac. 547]; *People* v. *Middleton,* 65 Cal. App. —— [223 Pac. 448]).

It is clear from the later decisions that subdivision 4 is unconstitutional, but that where an instruction is proposed in the language of that subdivision, the giving or the refusal to give it will not be held to be prejudicial error; and this upon the reasoning that it states mere commonplace matter within the general knowledge of the jury. However, as it is settled law that subdivision 4 is unconstitutional it should never be made the basis of an instruction. In view of the decisions under the constitutional provision (art. VI, sec. 19) the giving of such an instruction is a charge with respect to matters of fact. There is, therefore, ground for concluding that where it is resorted to it must be for the purpose of influencing the jury as to the evidence. Appellate courts should be spared the labor of condemning or palliating departures from the settled law of the state, and litigants from the liability of reversal.

We will now review the authorities cited as well as others which deal with instructions addressed to expert evidence.

It was stipulated that the expression "with great caution," as it appears in parentheses in instruction 3, was not given to the jury, notwithstanding the indorsement thereon indicates it was. It is shown by the indorsements that the word "much" in instructions 4 and 5 was omitted. The only cautionary matter left are the words "with scrutiny and caution" in instruction 4, "with careful scrutiny and caution" in instruction 5, and "receive with caution" in instruction 6.

The instruction in *McLean* v. *Crow*, 88 Cal. 644, 648 [26 Pac. 596], containing the phrase "with scrutiny and much caution" in relation to medical experts was rejected. The court said: "We see no objection to the instruction asked, and the court might well have given it; but it does not necessarily follow that the judgment should be reversed for the refusal."

*Haight* v. *Vallet*, 89 Cal. 245, 250 [26 Pac. 897], held it was not error to instruct the jury that the testimony of an expert on handwriting should be received with great caution. The case appears in 23 Am. St. Rep. 465, and was referred to in notes to *Hull* v. *St. Louis*, 42 L. R. A. 760n, and *State* v. *Ryno*, 64 L. R. A. 318n. The note to *Louisville etc. Ry. Co.* v. *Whitehead*, 42 Am. St. Rep. 472, quotes from *Haight* v. *Vallet, supra:* "Expert evidence should be received with great caution, and rejected by the jurors the same as the testimony of any other witness if, after due consideration, they deem it not well founded in fact." But the note also cites *Atchison etc. R. R. Co.* v. *Thul,* 32 Kan. 255 [49 Am. Rep. 484, 4 Pac. 352], to the effect that in an ordinary case it is error to instruct the jury that medical testimony should be received and weighed with caution. We quote from the syllabus of *Louisville etc. Ry. Co.* v. *Whitehead, supra:* "An instruction that the evidence of expert witnesses is 'to be received with caution, as the opinions of such witnesses, however honestly entertained, may be erroneous,' is fatally erroneous, for the reason that expert evidence is to be received and treated by the jury precisely as other testimony."

The dissenting opinion (the subject was discussed in the department but not in the main opinion) in *Beveridge* v. *Lewis*, 137 Cal. 619 [92 Am. St. Rep. 188, 59 L. R. A. 581, 67 Pac. 1040, 70 Pac. 1083]—a condemnation proceeding

wherein substantially all the proof of values was the testimony of experts—cites the case there in support of an instruction to the effect that in weighing the evidence the jurors may exercise their individual judgment as to the values in the light of their own general knowledge.

The action of the trial court was upheld in *People* v. *Smith,* 106 Cal. 73, 79 [39 Pac. 40], in eliminating from two instructions the respective phrases—''caution should be exercised by the jury in accepting the opinion of an expert as a fact proven in the case'' and ''such evidence should therefore be received with great caution by the jury,'' and approved the following, given in lieu thereof, ''After considering all these things, and any other circumstances in evidence, you are to give such testimony (such weight) as you in your judgment think it entitled to. If convincing, and carrying with it a belief in its truth, act upon it; if not, you have a right to reject it.''

In *People* v. *Barthleman,* 120 Cal. 7, 13 [52 Pac. 112], instructions 5 and 6 related to the testimony of certain medical experts. Instruction 5 contained the phrase ''the testimony was to be viewed with scrutiny and received with great caution.'' The court held '' . . . the judgment should not be reversed for the giving of these instructions, without reference to the question whether or not it was strictly proper to give them. They merely told the jury to do what they should have done without any instruction on the subject; and therefore the giving of the instructions was not, at least, prejudicial error.''

In *Estate of Blake,* 136 Cal. 306 [89 Am. St. Rep. 135, 68 Pac. 827], an order admitting a will to probate was reversed upon the ground that an instruction of which the following is a part so discredited the testimony of the medical experts as to practically destroy it: ''You are instructed, therefore, that while we receive and you will take into consideration the opinion of experts, such opinions are not entitled to as much weight as facts, especially where there is a conflict between an opinion and a fact; when a fact is established, it is a fact, and cannot be overcome; while an opinion is but an opinion, and it may be true and it may be untrue. Opinions of different experts are often diametrically opposed to each other, even when based upon the same supposed conditions.''

The instruction in *Quint* v. *Dimond*, 147 Cal. 707, 714 [82 Pac. 310], was held to be substantially an argument to the jury in favor of plaintiff upon questions of fact, but it was not addressed to expert testimony.

It was held in *People* v. *Wilkins*, 158 Cal. 530, 537 [111 Pac. 612], that the trial court did not err in refusing to give an instruction admonishing the jury "to scrutinize opinion evidence or expert evidence with the utmost care."

It was declared in *Rolland* v. *Porterfield*, 183 Cal. 466, 469 [191 Pac. 913]: "Whatever the individual opinion as to the value of expert testimony, it has been clearly settled in this state that, as regards the preference or weight to be given the testimony in any particular case, the law makes no distinction between expert testimony and evidence of other character, and that, when there is a conflict between scientific testimony ·and testimony as to the facts, the jury, or trial court, must determine the relative weight of the evidence. (*Estate of Blake*, 136 Cal. 306 [89 Am. St. Rep. 135, 68 Pac. 827]; *Watson* v. *Watson*, 58 Mich. 507 [25 N. W. 497].)"

The instruction condemned in *Estate of Blake, supra,* was given in *Estate of Hess*, 183 Cal. 589, 593 [192 Pac. 35], where it was held to invade the province of the jury. The court, however, did not pass on the contention "that *Estate of Blake* having been decided prior to the adoption of section 4½, article VI, of the constitution, is not authority for the reversal of the judgment herein because of the giving of instruction 23." The case was reversed upon the ground that the evidence was insufficient to show the decedent was mentally unsound.

In *Estate of Nelson*, 191 Cal. 280 [216 Pac. 368], it was declared: "Appellant contends that the trial court erred in refusing an instruction to the effect that the testimony of expert witnesses should be received with great caution. This instruction was properly refused (*Quint* v. *Dimond*, 147 Cal. 707, 714 [82 Pac. 310]; *People* v. *Wilkins*, 158 Cal. 530 [111 Pac. 612]; *Rolland* v. *Porterfield*, 183 Cal. 466 [191 Pac. 913]; *Estate of Hess*, 183 Cal. 589 [192 Pac. 35])."

In *Wood* v. *Los Angeles Co.*, 1 Cal. App. 474 [82 Pac. 547], it was held not to be error to refuse to give a cautionary instruction proposed by the defendant which used the

phrase "great caution" with reference to opinion evidence of medical experts. The rule followed in *Haight* v. *Vallet, supra,* was considered in connection with the later decisions on the question.

It is clear from what is said on this subject in the later cases that an instruction to the jury as to the value of or the manner of determining expert testimony is in violation of the constitutional provision as to instructing juries on matters of fact (art. VI, sec. 19).

Section 2061 does not, in terms at least, authorize the court to charge the jury as to expert testimony. Subdivision 4 contains the only provision warranting an instruction as to particular classes of witnesses. There is, therefore, neither constitutional nor statutory warrant for the giving of cautionary instructions. Respondent seeks to excuse the giving of these instructions with the explanation that using the word "statements" instead of "admissions" so as to bring the instruction within the language of subdivision 4, was a typographical error. But this explanation does not meet the point that subdivision 4 is unconstitutional.

It may be remarked in mitigation of the error in the instructions herein that they did not refer specifically to the different classes of expert witnesses. Appellant called only one expert witness, and he qualified and testified under subdivision 9, section 1870, and section 1944, of the Code of Civil Procedure. Eight expert witnesses testified for respondent—three of them qualifying and giving their opinions under the same rule as appellant's witness, and five under subdivision 9, section 1870, and section 1943, as having knowledge of the handwriting of respondent. Appellant's expert was shown to be accomplished in the art of handwriting, and of the five who testified from knowledge of respondent's signature four were her relatives and one a friend. Of the three who based their opinion on a comparison of the writings with the signatures on the notes two of them qualified on their experience in the banking business and the other as an instructor in handwriting in a high school. Keeping these features of the case in mind, respondent's suggestion that it is more likely the cautionary instructions were considered by the jury with reference to respondent's witnesses rather than to appellant's expert may be true. However, that may be, the trial courts should refrain from giving any

instructions that infringe the constitutional provision (art. VI, sec. 19). Since the law authorizes the admission of expert testimony, like all other matters of fact, it should be left strictly to the jury to weigh and determine its effect and value unaided by the court, either by disquisitions on that character of evidence or by directing the mental processes of the jurors as to how they should resolve it into facts. "The court has no right to dictate or suggest the process of reasoning by which the evidence shall be judged"(*Estate of Carpenter*, 94 Cal. 406, 417 [29 Pac. 1101]). It is no part of the function of the court to either extol or disparage the testimony of experts. It is proper in the instructions to the jury to call attention, for instance, to the distinction between expert testimony and the evidence of facts, to explain the office of exemplars in handwriting cases, to charge that the opinion of experts is to be considered with the other evidence in the case in determining the facts. But it is never proper to instruct the jury that expert testimony is or is not reliable or as to how the jury should appraise it.

5. Under point III appellant enumerates numerous rulings in the admission and rejection of evidence which it is claimed were erroneous.

[10] (A) It is contended a proper foundation had not been laid for impeaching questions put to Elisha Dana to elicit a conversation he had with appellant as to certain letters addressed by respondent to Murphy and by Murphy given to appellant, which it was claimed reflected on her character. The witness quoted appellant as saying the best thing respondent could do would be to pay the notes, and that if she did not do so he would expose her. There would seem to be no merit to the objection as to lack of foundation for impeachment. Respondent was entitled in the state of the inquiry to have the conversation established as an independent proposition without regard to impeachment and to prove what appellant did say even though he denied making the statements.

[11] It is also claimed, on the ground no proper foundation was laid within the meaning of section 2052 of the Code of Civil Procedure, that the court erred in overruling appellant's objections to "impeaching questions" put to respondent concerning conversations between them, including one in the lobby of the Palace Hotel in September, 1918.

Appellant had already testified there was a meeting between them in the Palace Hotel but did not give the conversation. He also testified to other conversations and gave his version of them. The "impeaching questions" followed respondent's examination in chief and related to the above conversations, embracing the statements imputed to her by appellant, including her purported admission of the execution of the notes, her promise to pay them, her request for an extension of time and other matters. As these conversations, as well as others, went to the merits of the question of the responsibility of respondent for the promissory notes we do not perceive that a foundation was necessary.

In view of the reversal of the judgment it will not be necessary to consider appellant's objections as to the type of questions complained of.

[12]    (B) It is contended the court erred in overruling appellant's objections to the questions put to respondent covering her intent at the time she initialed the notes. Appellant's repeated objection was that the inquiry was incompetent, irrelevant, and immaterial, calling for the opinion and conclusion of the witness, and being the very question the jury has to determine. The court sustained an objection to each of such questions, that is to say, questions as to whether the witness intended by her initials to ratify the notes, and finally overruled an objection to the question: "Q. Why was it you put the 'RD' on these promissory notes? A. To help Mr. Hirshfeld lock Mr. Murphy up and put him in jail." It is not altogether clear whether if Murphy were to be prosecuted, it was to be for the making and uttering of the notes or obtaining the eight hundred dollars from the parties. Respondent did not state upon what it was proposed to prosecute Murphy, but when appellant was asked why respondent was angry at Murphy he answered: "Because he took advantage of her getting her notes and discounting them and using the money, I suppose." The inquiry apparently called for substantive evidence of a fact of which the witness had primary knowledge—namely, why she initialed the notes.

(C) It will serve no purpose to consider these objections.

(D) We think this proposed evidence was too remote to prove appellant was relying on respondent and not on Murphy to meet the obligations.

(E) On the retrial the question whether respondent should have been allowed over appellant's objection to testify she had not engaged Murphy to manage her ranch, which testimony was merely in response to appellant's extrajudicial statement to her that Murphy had so told him, will probably not arise.

[13] (F) Appellant contends the court erred in limiting the cross-examination of Elisha Dana as to respondent's handwriting by not allowing the witness to make a comparison between the signatures on the notes, which he testified were not in respondent's handwriting, and appellant's exhibit No. 6, an admitted handwriting of respondent. The witness was testifying under subdivision 9, section 1870, and section 1943, and the court sustained the objection on the ground it was not cross-examination. While this is a matter resting largely in the discretion of the trial court, the witness should be sufficiently interrogated as to his opinion.

(G) This specification does not call for comment.

(H) The witness, Samuel Dana, apparently based his opinion in part on his personal knowledge of the controversy, and to an extent on his knowledge of respondent's handwriting. However, he finally placed his opinion on the latter. If he is again called as a witness his examination may more clearly show the foundation for his opinion.

(I) We have already discussed this point.

(J) It is contended by appellant that the court erred in excluding testimony of a purported conversation between appellant and respondent in 1917 in which it is claimed the latter admitted the execution of certain notes of that year; the extinguishment of which was the consideration for two of the notes in suit—those dated February 4, 1918. The objection to the proffered testimony was that it was "incompetent, irrelevant and immaterial, not proper redirect examination and going into collateral matters, and vague, indefinite and uncertain." The court finally said: "Well, I will sustain the objection to the question. Of course, I think probably upon rebuttal you would be entitled to bring out that conversation but relating to this transaction here." The inquiry was not resumed and in all probability this objection will be obviated on a retrial.

Judgment reversed.

Lennon, J., Myers, J., Kerrigan, J., Wilbur, C. J., Waste, J., and Seawell, J., concurred.