R.A. 740n'

[Crim. No. 336. In Bank.—February 2, 1898.]

THE PEOPLE, Respondent, *v.* JOHN H. BARTHLEMAN, Appellant.

| 120 | 7 |
|-----|-----|
| 132 | 333 |
| 120 | 7 |
| 136 | 311 |
| 120 | 7 |
| 139 | 162 |
| 120 | 7 |
| 142 | 365 |

CRIMINAL LAW — HOMICIDE—INSTRUCTIONS ALREADY GIVEN — REASONABLE DOUBT.—Upon the trial of a defendant charged with murder, instructions requested by the defendant upon the subject of reasonable doubt are properly refused, where the court, in its own charge, and in other instructions given at his request, has correctly and in great detail covered the whole subject of reasonable doubt.

ID.—DEFENSE OF INSANITY—EVIDENCE POINTING TO TWO CONCLUSIONS—REASONABLE DOUBT—INSTRUCTIONS PROPERLY REFUSED.—Where the only defense is one of insanity, and there is no conflict of evidence as to the commission of the homicide by the defendant, the defendant cannot be prejudiced by refusal to give an instruction that if the evidence points to two conclusions, one consistent with the defendant's guilt, and the other consistent with his innocence, the jury are bound to reject the one of guilt and adopt the one of innocence, and acquit the defendant, especially where the principle sought to be stated was included in other parts of the instructions; and an instruction that if one set or chain of circumstances leads to two opposing conclusions, one of guilt and the other of innocence, and that if the jury have a reasonable doubt to which of such conclusions the chain of circumstances leads, the defendant must be acquitted, is properly refused as confusing, and because a reasonable doubt as to the insanity of the defendant is not sufficient to make out that defense.

ID.—PRACTICE AS TO INSTRUCTIONS REFUSED—STATEMENT TO JURY.—Under the existing practice, the jury can take into their room only the instructions which have been given, and it has no knowledge of instructions that have been refused; and it is not, therefore, material that it should be stated to the jury that certain instructions asked by the defendant were refused because they had been given in other instructions.

ID. — IMPROPER INSTRUCTION AS TO INSANITY — ABSENCE OF POWER TO AVOID WRONG AND DO RIGHT.—An instruction requested by the defendant that

although the defendant at the time of the homicide was able to distinguish right from wrong, yet, if he "did not possess the power to avoid the wrong and do the right, he is irresponsible, and you must acquit," is not the law, and is properly refused.

ID.—REASONABLE DOUBT OF SANITY.—An instruction requested that if the jury "have a reasonable doubt of the sanity of the defendant at the time of the commission of the homicide, they must acquit him," is properly refused, a reasonable doubt as to a defendant's sanity not being sufficient to warrant an. acquittal.

ID.—INSTRUCTION AS TO MALICE—REASONABLE DOUBT—MENTAL DIFFICULTY.— An instruction requested upon the subject of malice is properly refused when the court fully instructed the jury on that subject in other parts of its instructions; and where the only ground upon which the absence of malice could be based was insanity, the effect of a reasonable doubt upon the question of malice is improperly included in the instruction; and a proposition in the instruction that if the jury believed from the evidence that "such mental difficulty" existed as would preclude the exercise of malice, they must find the defendant not guilty, may be refused as being obscure and uncertain.

ID.—IMPAIRMENT OF WILL—INSUFFICIENT DEFINITION OF INSANITY.—An instruction that if the jury "believed the testimony of expert witnesses that the defendant, at the time of the homicide, was afflicted with mental disease, melancholia, that impaired his will and rendered him likely to commit such an act as he did, then the defendant must be acquitted," is properly refused as not constituting a sufficient definition of that legal insanity which is a defense to a charge of crime.

ID.—WEIGHT OF EVIDENCE—PROVINCE OF JURY—INAPPLICABLE INSTRUCTION.— An instruction requested by the defendant upon the weight of evidence, and which would be an encroachment upon the province of the jury, and which is not applicable to the case and to the defense of insanity set up, is properly refused.

ID.—HARMLESS MODIFICATION OF INSTRUCTION—MOMENTARY INSANITY.—The modification of an instruction as to the effect of the defendant's being insane at the time of the homicide, by striking out the words "although only momentarily," was not prejudicial to the defendant, where the instruction as given, together with all of the other instructions given on the subject of insanity, sufficiently stated the law on that subject, and were as favorable to the defendant as he could reasonably have expected.

ID.—INSTRUCTIONS AS TO VALUE OF EXPERT EVIDENCE—PROVINCE OF JURY.— Instructions as to the testimony of expert witnesses who gave their opinions as physicians about the insanity of the defendant in answer to questions mostly hypothetical, to the effect that such testimony was to be viewed with scrutiny and received with great caution, and the jury could reject it if they deemed it not well founded in fact, and that the value of such testimony depended upon the truth or falsity of the facts given to them, and upon which they founded their opinion, are correct as applied with respect to the mere opinions of experts, and the only plausible objection to them is that

they encroach upon the province of the jury; but the judgment should not be reversed for the giving of such instructions, without reference to the question whether or not it was strictly proper to give them, as they only told the jury to do what they should have done without any instruction upon the subject.

ID.—EVIDENCE AS TO INSANITY—NONEXPERT WITNESSES—DISCRETION—" INTIMATE ACQUAINTANCES."—Nonexpert witnesses may be allowed to testify to the insanity of the defendant, and the court has discretion in admitting the testimony of witnesses claimed to be "intimate acquaintances" within the meaning of subdivision 10 of section 1870 of the Code of Civil Procedure.

ID.—HOSTILITY OF DEFENDANT TOWARD DECEASED.—Evidence of witnesses is admissible to show that the defendant on several occasions used language expressing hostility to and dislike of the deceased, as tending in some degree to show malice and motive.

ID.—KILLING OF DIVORCED WIFE—CUSTODY OF CHILD—TAKING CHILD AWAY.— Where the defendant killed his divorced wife upon her refusal to allow him to have the custody of a child born to them during marriage, evidence that he took the child away from the mother to a remote place, and the decree of divorce awarding the custody of the child to the mother, are admissible in evidence.

ID.—UNIMPORTANT RULINGS.—Unimportant rulings upon questions of evidence, which, if erroneous, were without prejudice to the appellant, are not ground for reversal.

ID.—ARGUMENT OF DISTRICT ATTORNEY—ILLUSTRATIONS—CHARGE OF COURT.— Language used by the district attorney referring, by way of illustration of his argument, to well-known historical incidents, cannot constitute misconduct; and where, in response to other objections as to the line of the district attorney's argument, the court told the jury that "if counsel for the people go beyond the evidence, or beyond a rational discussion of the evidence," it is their duty to disregard it, there is no ground for reversal for misconduct of the district attorney.

APPEAL from a judgment of the Superior Court of Los Angeles County and from orders denying a new trial and denying a motion in arrest of judgment. B. N. Smith, Judge.

The facts are stated in the opinion of the court.

Frank F. Davis, and A. M. Cates, for Appellant.

W. F. Fitzgerald, Attorney General, for Respondent.

McFARLAND, J.—Defendant was charged with the murder of one Mabel Barthleman, and was convicted of murder in the first degree, the jury assigning the death penalty. He appeals

from the judgment and from an order denying him a new trial, and from an order denying his motion in arrest of judgment.

There was no conflict of evidence, and there is no question whatever touching the facts of the homicide. The defendant and the deceased were at one time husband and wife, and prior to the date of the homicide had been divorced. Immediately before the commission of the homicide, appellant, who had come into the presence of the deceased, asked her if he could have the child that had been born to them during their marriage, and, upon her saying "no," he drew a revolver and shot her several times, inflicting mortal wounds from which she shortly afterward died. Apparently, the homicide was a malicious, cold-blooded murder, unjustifiable and indefensible. The only defense offered was insanity.

The main grounds for a reversal are alleged errors committed by the court in the matter of instructing the jury; and they consist mostly of exceptions to the refusal of the court to give certain instructions asked by the appellant. There are also some alleged errors arising out of rulings upon the admissibility of evidence.

It is contended that the court erred in refusing to give the instructions asked by appellant, numbered 12, 14, 15, 19, 34, and 35. The first four of said instructions refer to the subject of reasonable doubt, and they were properly refused because the court in its own charge, and in other instructions given at the request of appellant, had correctly and in great detail covered the whole subject of reasonable doubt. The other two instructions are as follows:

"34. The jury are instructed that if the evidence points to two conclusions, one consistent with the defendant's guilt, the other consistent with the defendant's innocence, the jury are bound to reject the one of guilt and adopt the one of innocence, and acquit the defendant."

"35. The jury are instructed that if one set or chain of circumstances lead to two opposing conclusions, one pointing to the guilt, the other pointing to the innocence of the defendant, and the jury have any reasonable doubt as to which of such conclusions the chain of circumstances leads, a reasonable doubt is thereby created, and the defendant must be acquitted."

The instruction 34 is, perhaps, true as an abstract proposition, although the words "points to" have no very definite value; but the principle sought to be stated was included in other parts of the instructions, and, moreover, would be of importance only where there was conflict of evidence as to the commission by the defendant of the homicide charged; and in the case at bar the defendant could not have been prejudiced by the refusal to give the said instruction, considering the other instructions given and the character of the defense set up. Instruction 35 was erroneous, because a "reasonable doubt" as to insanity is not sufficient to make out that defense; and the expression of a doubt about "*two* opposing conclusions," to *both* of which a chain leads, is confusing.

It is contended that the court erred in not stating to the jury that it refused certain instructions asked by appellant because they had been given in other instructions; and one or two early decisions of this court are cited as sustaining that doctrine. But whatever may have been the practice in former years, it is now the law that the jury can take into their room only those instructions which have been given (Pen. Code, sec. 1137); and the jury now has no knowledge of instructions that have been refused.

Instruction No. 26½ was properly refused. It requested the court to instruct the jury that although the appellant at the time of the homicide was able to distinguish right from wrong, yet, if he "did not possess the power to avoid the wrong and do the right, he is irresponsible, and you must acquit." This is not the law. (*People v. Hoin,* 62 Cal. 120; 45 Am. Rep. 651; *People v. Ward,* 105 Cal. 343; *People v. McCarthy,* 115 Cal. 255; *People v. Hubert* (Cal., Dec. 11, 1897). Instruction 28 was properly refused, because it asked the court to instruct the jury that if "they have a reasonable doubt of the sanity of the defendant at the time of the commission of the homicide they must acquit him." A reasonable doubt of a defendant's sanity is not sufficient to warrant an acquittal. (*People v. Ward, supra,* and authorities there cited.) Instruction 30, relating to malice, was properly refused, because the court fully instructed upon that subject in other parts of its instructions; moreover, the only ground upon which absence of malice could be based was insanity, and there-

fore the expression "reasonable doubt" was improperly included in the instruction; moreover, the proposition included in the instruction, that, if the jury believed from the evidence that "such mental difficulty" existed as would preclude the exercise of malice, they must find the defendant not guilty, is obscure and uncertain. By the requested instruction No. 32 the court was asked to instruct the jury as follows: "The jury are instructed that if they believe the testimony of the experts that the defendant at the time of the homicide was affected with mental disease, melancholia, that impaired his will and rendered him likely at any time to commit such an act as he did, then the defendant must be acquitted." This instruction was properly refused; it does not constitute a sufficient definition of that legal insanity which is a defense to a charge of crime. The requested instruction No. 33 was properly refused, because it states the proposition that the jury should acquit if they had a reasonable doubt of appellant's sanity.

No. 23 was properly refused. It asked the court to instruct as to the "weight" of certain evidence, and such an instruction would have been an encroachment upon the province of the jury; moreover, it was not applicable to the case and the defense set up.

There was no prejudicial error in modifying No. 29. That instruction as requested by appellant was as follows: "The jury are instructed that if they find from all the evidence in the case that defendant was, at the time of the homicide, although only momentarily, incapable by reason of mental disease of appreciating the nature and quality of his act, or incapable of appreciating its wrongfulness, then the defendant must be acquitted." The court gave the instruction with the modification of striking out the words "although only momentarily." The instruction as given, together with all the other instructions given on the subject of insanity, fully and sufficiently stated the law on that subject. Among other instructions the court, at the request of appellant, gave the following: "27. The jury are instructed that to establish a defense on the ground of insanity, it must only appear by a preponderance of the evidence that at the time of the commission of the homicide the defendant was laboring under such a defect of reason as not to know the nature or quality of the act committed, or not to know the act was wrong."

The foregoing are all the exceptions to the refusal of the court to give instructions. The transcript is plethoric with instructions asked, and either given or refused. The appellant, himself, presented forty separate instructions, about one-half of which were given. The court, of its own motion and on request of the prosecution, instructed very fully, and correctly, on the subjects of reasonable doubt and insanity. Among other things, it gave Chief Justice Shaw's definition of reasonable doubt, so often approved by the courts of the whole country. And the various instructions given about insanity covered that subject fully, and were certainly as favorable to appellant as he could reasonably have expected. There was no error, therefore, committed in the refusal or modification of any requested instruction.

There is some contention that the court erred in giving instructions 5 and 6 asked by the prosecution. These instructions relate to the testimony of certain physicians who testified as experts, and gave their opinions about the insanity of the appellant in answer to questions mostly hypothetical. By the first of said instructions the jury are told substantially that such testimony was to be viewed with scrutiny, and received with great caution, and that the jury could reject it if they deemed it not well founded in fact; and by the second they were told that the value of such testimony depended upon "the truth or falsity of the facts given to them and upon which they found their opinion." The only plausible objection to these instructions is that they encroach upon the province of the jury. There is no doubt that courts, when instructing juries, frequently approach too nearly the line that divides questions of law from questions of fact and matters of evidence, which are, under our system, wholly within the province of the jury; and this tendency enables counsel to harass judges with innumerable requests for instructions which really present conclusions as to issues of fact instead of statements of principles of law. But, with respect to the two instructions now under review, it has frequently been said by textwriters and in judicial opinions that the matters stated in said instructions are correct and true, and in some cases it has been expressly held that the giving of such instructions to the jury was proper (see Rogers on Expert Testimony, 2d ed., 450, et seq., and cases

there cited; *Grigsby v. Clear Lake Water Co.*, 40 Cal. 405); and there is no doubt that with respect to the mere opinions of experts, as given in the case at bar, the matters stated in the instructions are true. This being so, the judgment should not be reversed for the giving of these instructions, without reference to the question whether or not it was strictly proper to give them. They merely told the jury to do what they should have done without any instruction on the subject; and therefore the giving of the instructions was not, at least, prejudicial error. We desire to say, however, that appeals in criminal cases would be relieved of much embarrassment if doubtful instructions asked by the prosecution were refused, except where they appear to be absolutely essential to a proper presentation of the case in hand. They usually have no influence on the jury; and yet they frequently present the alternative of granting new trials where the convictions are apparently just, or making bad precedents to the injury of innocent persons who in the future may be charged with crimes.

The exceptions taken to the allowance of nonexpert witnesses as to the insanity of appellant are not maintainable. Within the rule stated in *People v. McCarthy, supra, People v. Schmitt*, 106 Cal. 52, *People v. Lane*, 101 Cal. 513, and *Estate of Carpenter*, 94 Cal. 414, the court did not abuse its discretion in admitting the testimony of the witnesses claimed to be "intimate acquaintances" within the meaning of subdivision 10 of section 1870 of the Code of Civil Procedure.

Appellant objected to the allowance of the testimony of certain witnesses, particularly that of the witnesses Holden, Anna Holden, and Mrs. Crumm, to the general effect that appellant, on several occasions, had used language expressing hostility to and dislike of the deceased. The general objection seems to be that this language was proven for the purpose of showing threats against deceased, and that it did not amount to threats. But the testimony was admissible as tending to show appellant's feelings toward the deceased and his treatment of her, and in some degree to show malice and motive. (*People v. Kern*, 61 Cal. 244.) The same principle applies to the testimony of Holden that appellant took the child of himself and the deceased away from the latter to a remote place, and to the introduction of the part

of the decree of divorce which adjudicated the custody of the child.

Appellant contends that the court erred in sustaining an objection to this question asked by the counsel of his witness, William Baskwell: "Do you know why he carried a pistol?" The witness had testified, among other things, as follows: "Mr. Barthleman was in the habit of carrying a pistol; he carried a pistol when I roomed with him; that was seven or eight years ago. I roomed with him about three months on Spring street, and he carried one then." The question above stated was then asked, and objection to it sustained, when the witness continued as follows: "I am not able to state anything about his habit of carrying a pistol after the date I have mentioned." The question might have been properly allowed for what it was worth, but the time of the witness' knowledge upon the subject was too remote to give it any substantial value, and the ruling, whether strictly right or wrong, was about a matter evidently too unimportant to warrant a reversal of the judgment. The testimony of this witness Baskwell was very favorable to appellant; he testified very fully about his notion of appellant's insanity, and was allowed to say things which, if the prosecution had objected, could have been excluded. Indeed, the whole record shows that appellant's effort to sustain his defense of insanity was given wide range, and that there can be no just claim that it was unlawfully or unfairly restricted.

The court, on motion of the prosecution, struck out the testimony of appellant's witness J. T. Vennum; and the ruling is assigned as error. After this testimony had gone to the jury it might as well have been allowed to stand, but it was colorless and of no importance, and striking it out affords no ground for reversal.

Appellant's witness, Mrs. Burg, testified, among other things, that some time before the homicide the appellant complained to her of sleeplessness; to this the prosecution objected as hearsay, and the court said, "what she said about sleeping may be stricken out," but afterward she repeated this testimony without objection. There is, therefore, nothing in the point.

There is nothing in the point of the alleged misconduct of the district attorney in his closing address to the jury. By the

language objected to he merely used well-known historical incidents to illustrate his argument. The court had told the jury, in response to certain other objections made by appellant's counsel while the district attorney was addressing them: "If counsel for the people go beyond the evidence, or beyond a rational discussion of the evidence, it is your duty, gentlemen of the jury, to disregard it."

We have noticed, we think, all the points made by counsel. The motion in arrest of judgment is not argued, and there was evidently no ground for it. The case was, upon the whole, fairly presented to the jury, and we see no legal reason to disturb their verdict or to reverse the judgment.

The judgment and orders appealed from are affirmed.

Garoutte, J., Harrison, J., Van Fleet, J., Henshaw, J., and Temple, J., concurred.