[No. B099081. Second Dist., Div. Two. Oct. 2, 1997.]

WESTERN LANDSCAPE CONSTRUCTION, Plaintiff and Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Defendant and Respondent.

**COUNSEL**

Monteleone & McCory, David C. Romyn and Patrick J. Duffy for Plaintiff and Appellant.

Ivanjack & Lambirth, Kathryn B. Milstead and Elise A. Ross for Defendant and Respondent.

**OPINION**

**ZEBROWSKI, J.**—This case concerns the proper application of construction industry release forms worded in the statutory language of former Civil Code section 3262, subdivision (d)(1). Until the statute was recently amended, forms with this wording were commonly submitted by subcontractors when applying for progress payments. The forms operated to release

certain stop notice and mechanic's lien rights in return for a progress payment. The specific question in this case concerns whether these forms release a subcontractor's stop notice and mechanic's lien rights with respect to "retention" payments—payments relating to work already done but which are not presently paid, which instead are withheld until completion of 100 percent of the subcontractor's work. The trial court in this case relied upon a dictum in *Halbert's Lumber, Inc.* v. *Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233 [8 Cal.Rptr.2d 298], to find that the subcontractor in this case lost its lien rights as to retention payments by using the statutory forms. We respectfully find that if the dictum is construed to state what the trial court thought it stated, it does not correctly state the law. We will therefore reverse and remand.

## I. FACTUAL BACKGROUND.

Defendant Bank of America National Trust and Savings Association (the bank) made a construction loan secured by a deed of trust against real property on which a housing project was to be built. The loan agreement called for disbursements to be made upon presentation to the bank of release forms in the language specified by former Civil Code section 3262, subdivision (d)(1). These release forms were to be executed by the subcontractors before they received progress payments. Such release forms are arguably worded to release a subcontractor's mechanic's lien and stop notice rights for all work done up to the release date specified in the release, but such a form "does not cover any retention." Retention payments are the issue in this case.

Plaintiff Western Landscape Construction contracted to do landscaping work on the project. As is normal during the course of such a project, Western Landscape submitted applications for progress payments accompanied by executed release forms, and received progress payments less a 10 percent retention. The retention amount constituted money earned by Western Landscape for work done during the immediately preceding progress payment period, but which was withheld pursuant to contract until final completion and inspection. Upon satisfactory completion of the project, the total amount of retained funds was to be paid in a lump. The purpose of the retention system is to encourage subcontractors to complete all work contracted for in a satisfactory fashion by withholding 10 percent of the moneys earned until this is accomplished.

Through no fault of Western Landscape, the project encountered difficulties, the construction loan went into default, and the bank foreclosed. Since

the builder and developer was no longer available to pay Western Landscape's bills, Western Landscape served a bonded stop notice on the bank, seeking to recover against the bank for the work Western Landscape had done on the project. Included in the amount claimed in Western Landscape's stop notice was $205,307 of unpaid retention. Western Landscape eventually commenced the instant suit to enforce its stop notice rights against the bank and to collect the unpaid retention.

In the trial court, a major issue was the effect of two cases decided by the Fourth Appellate District: *Halbert's Lumber, Inc.* v. *Lucky Stores, Inc., supra*, 6 Cal.App.4th 1233 (*Halbert's*), and *J.A. Jones Construction Co.* v. *Superior Court* (1994) 27 Cal.App.4th 1568 [33 Cal.Rptr.2d 206] (*J.A. Jones*). The bank argued that, according to these two cases, Western Landscape had waived its stop notice rights regarding unpaid retention when it executed the statutory progress payment release forms. Western Landscape argued that *Halbert's* and *J.A. Jones* were wrongly decided, but that in any event the statements in *Halbert's* about retention payments were dictum, and that the dictum was wrong.

The trial court held that it was bound by *Halbert's* and *J.A. Jones* on the retention release issue. The case went to trial on Western Landscape's theories of how it could avoid the effect of the releases. The court found the releases effective to waive Western Landscape's stop notice rights as to the retention payments. Western Landscape appeals on several grounds.

## II. THE HALBERT'S CASE AND STARE DECISIS.

a. *Halbert's.*

In *Halbert's, supra*, 6 Cal.App.4th 1233, a lumber company was supplying lumber to a construction site. The lumber company applied for a progress payment and executed a release form stating, in the statutory language, that "This release covers a progress payment for materials furnished . . . through May 19, 1986 only and does not cover any retention or items furnished after said date." Despite the language of the release, the lumber company had supplied a number of glu-lam beams to the construction site before May 19, 1986, but had mistakenly not included them in its progress payment request. The release, however, could be read to release all mechanic's lien and stop notice rights with regard to all materials furnished prior to the May 19 date, not simply to release these rights in an amount equal to the amount of progress payment. Later, after the lumber company did not receive payment for the glu-lam beams, the lumber company recorded a mechanic's lien to secure payment for the beams. The holding in *Halbert's*

was that the mechanic's lien was invalid because such lien rights had been released insofar as the beams were concerned.

The decision in *Halbert's* was heavily criticized as unfair and inconsistent with established construction industry practices which limited the scope of a release to the amount of progress payment received. After the decision in *Halbert's*, Civil Code section 3262, subdivision (d)(1), was promptly amended to eliminate the effect of the *Halbert's* decision. The earlier, now-superseded, statute applies to the instant case, however. Nevertheless, we need not consider whether *Halbert's* was properly decided. It is enough for present purposes to note that *Halbert's* had nothing to do with retention payments. Assuming that the decision in *Halbert's*—that the lumber company released its mechanic's lien and stop notice rights as to the glu-lam beams delivered before the release date—was correct, it remains the case that retention payments were not an issue in *Halbert's*. It does not follow from the decision in *Halbert's* that lien and stop notice rights as to retention payments were necessarily also released. However, the *Halbert's* opinion contains this dictum: "There is also the problem of retention. If the release did not cover any retention at all, then one could conclude that it covered at least some items furnished 'before said date.' But the release does not say that. It does not say 'does not cover any retention at all,' or even 'does not cover any retention, or items furnished after said date.' A comma, necessary for the latter interpretation, is missing." (*Halbert's, supra,* 6 Cal.App.4th 1233, 1245.)

What this somewhat enigmatic dictum might mean is difficult to determine. Except for the point that it makes much of the absence of a comma, exactly what was intended is not clear. One thing, however, is clear—it is clear that the statement is dictum. Retention payments were not involved in *Halbert's,* and whatever *Halbert's* has to offer on the subject of retention is not binding precedent.

b. *Stare decisis.*

The doctrine of precedent, or stare decisis, extends only to the ratio decidendi of a decision, not to supplementary or explanatory comments which might be included in an opinion. To determine the precedential value of a statement in an opinion, the language of that statement must be compared with the facts of the case and the issues raised. Only statements necessary to the decision are binding precedents; explanatory observations are not binding precedent. (See, e.g., 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 783, p. 753; Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 1996) ¶ 14:196, p. 14-54.) Clearly, the *Halbert's* court need not have said anything about retention payments. The payments

claimed in *Halbert's* were not retention payments, and there is no logical or legal reason why a release must necessarily operate identically with regard to both retention payments and other types of payments. Not only was the statement in *Halbert's* about retention dictum, but also, as discussed in part IV. below, it was erroneous to the extent it is interpreted to state that the release form waived mechanic's lien or stop notice rights as to retention payments.

### III. THE J.A. JONES CASE.

After Civil Code section 3262, subdivision (d)(1) was amended to eliminate the effect of the *Halbert's* ruling, the issue of the proper effect of the release form was taken up again by the Fourth Appellate District in *J.A. Jones, supra*, 27 Cal.App.4th 1568. In *J.A. Jones*, a contractor recorded a mechanic's lien after having signed release forms substantially identical to those used in *Halbert's*. The Fourth Appellate District reaffirmed its holding that the releases precluded a mechanic's lien to enforce a right to payment for work performed before the release date and not included in the progress payment amount. However, the *J.A. Jones* opinion itself states that the additional charges were for "work changes." (*J.A. Jones, supra*, 27 Cal.App.4th 1568, 1572). The opinion does not state that the "work changes" somehow constituted "retention." In any event, *J.A. Jones*, with one justice dissenting, reaffirms the legislatively rejected holding in *Halbert's*. It does not however, amount to a ruling of precedential value regarding the specific subject of *retention*.

### IV. THE SCOPE OF THE RELEASE.

The statutory language of the release form involved here reads in pertinent part as follows: "Upon receipt by the undersigned of a check from _____ in the sum of $_____ payable to _____ and when the check has been properly endorsed and has been paid by the bank . . . , this document shall become effective to release pro tanto any mechanic's lien, stop notice or bond right the undersigned has on the job of _____, located at _____ to the following extent. *This release covers a progress payment for labor, services, equipment or material furnished to _____ through _____ only and does not cover any retention or items furnished after said date.* Before any recipient of this document relies on it, said party should verify evidence of payment to the undersigned." (Former Civ. Code, § 3262, subd. (d)(1), italics added.)

The analysis in *Halbert's* revolved primarily around the meaning of the term "pro tanto" and the phrase "to the following extent." The question was whether the release extended only to the *amount* stated in the release, or

whether it extended to all services or materials provided *before the release date*. *Halbert's* concluded that the latter was the correct construction. (*Halbert's, supra,* 6 Cal.App.4th 1233, 1251.) Whatever the merits of that conclusion, it does not apply here. *Halbert's* did not involve retention; this case does.

■ Here we are concerned with the italicized sentence in the release form and its provision that the release "does not cover retention or items furnished after said date." This language cannot be read to mean that the party applying for the progress payment is releasing its lien rights as to accrued retention payments which might become payable in the future. As noted above, "retention" is money owed to a contractor but withheld in order to ensure completion of the work contracted for. At the time a contractor applies for a progress payment, the time at which the release form must be executed, the work corresponding to the retention payments has been done, but the payments are not yet payable. If lien and stop notice rights are released as to retention when the progress payment release form is executed, a subcontractor would be coerced to release its lien and stop notice rights before—possibly long before—the retention becomes payable. The subcontractor would then have only two choices: either forego all progress payments (thus converting the retention rate into an effective 100 percent), or forego its constitutional rights to security for the retained amounts. There is no indication that the Legislature intended to require that subcontractors waive their constitutional protections and continue to work unprotected in return for progress payments. Instead, the Legislature clearly stated that the release "does not cover retention."

A statute is to be construed as consistent with legislative intent. (*California Teachers Assn.* v. *Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632-633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) To construe the retention provisions of the release as the bank argues *Halbert's* did would require the conclusion that the Legislature intended to require that subcontractors waive their constitutional protections as to retention in order to receive progress payments of amounts not subject to retention. Such a conclusion would be wholly unsupported. The *Halbert's* holding regarding materials furnished (as opposed to retention amounts) was not unreasonable because an owner or lender cannot determine what items have been furnished except by an inspection of the site, and even that may not successfully determine the true status. Hence it was not unreasonable to construe the statutory language as intended to release lien rights as to such materials. Retention, however, can be determined by mere examination of documents. Thus the concern of *Halbert's* that owners and lenders be able to rely on the release without inspecting the site is not implicated in the case of retention. The last sentence of the release reads as follows: "Before any recipient of

this document relies on it, said party should verify evidence of payment to the undersigned." Any owner or lender following this advice can determine what amount of retention remains outstanding, if that information is material to them. By contrast, an owner or lender noting the release date and verifying that the amount of the release has been paid would not obtain knowledge that additional glu-lam beams had previously been delivered to the site but not billed for, as happened in *Halbert's*. The only reasonable reading is that the release form has no effect on the right to utilize lien or stop notice procedures to recover retention amounts.

In the final analysis, it is not clear exactly what *Halbert's* meant to say about retention, or why *Halbert's* commented on the issue of retention. The abstract wording of the dictum underscores its status as dictum—*Halbert's* had no occasion to consider the issue of retention and hence did not link its statements about retention to the facts of the case. The dictum might therefore have been misunderstood. The saving grace is that it does not control, however construed, because it was dictum.

While we are able to determine from this record that the trial court erred in applying *Halbert's* dictum as it did, we cannot determine whether Western Landscape is entitled to recover, or how much. The matter must therefore be remanded for such further proceedings as may be necessary in light of all the facts.

## V.   DISPOSITION.

The judgment is reversed and remanded for further proceedings consistent with this opinion. Appellant Western Landscape to recover costs on appeal.

Boren, P. J., and Ito, J.,* concurred.

A petition for a rehearing was denied October 22, 1997.

---

*Judge of The Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.