[No. A119908. First Dist., Div. Two. Feb. 11, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
HELIODORO ROMERO-ARELLANO et al., Defendants and Appellants.

## COUNSEL

R. Stevens Condie, under appointment by the Court of Appeal, for Defendant and Appellant Misael Jimenez-Gutierrez.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant Heliodoro Romero-Arellano.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RICHMAN, J.**—For more than 140 years, California jury instructions have referred to the prosecuting authority as "the People." CALJIC used that reference in its instructions, which reference continues today in CALCRIM. Instructed here with CALCRIM instructions, a jury convicted defendants Heliodoro Romero-Arellano and Misael Jimenez-Gutierrez (when referred to collectively, defendants) with possession of methamphetamine for sale (Health & Saf. Code, § 11378) and transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)). Jimenez-Gutierrez was also convicted of evading a police officer (Veh. Code, § 2800.2, subd. (a)).

Both defendants appeal, and each has filed his own brief, also joining in the argument of the other. (See Cal. Rules of Court, rule 8.200(a)(5); *People v. Stone* (1981) 117 Cal.App.3d 15, 19 [172 Cal.Rptr. 445].) The result is that defendants jointly make two arguments: (1) the trial court abused its discretion in excluding cross-examination of Officer Tomlin about his testimony in another case; and (2) the jury instructions referring to "the People" violated due process. We conclude that neither argument has merit, and we affirm. The unpublished portion of the opinion explains the reasons for rejecting the first argument. We publish the reasons for rejecting the second.

## BACKGROUND

### The Facts

Neither argument involves the facts giving rise to the convictions, and those facts need not be set forth in detail. The essential facts are that on July 18, 2007, Santa Rosa Police Detective Matthew Tomlin was working as an

undercover narcotics officer, dressed in plain clothes and in an unmarked vehicle. Tomlin was parked in a Taco Bell parking lot on Townview Lane, an area that "frequently has a lot of narcotic activity"; he was looking for suspicious vehicles, that is, vehicles that would slowly cruise around.

Tomlin saw a gold Saturn approach and initially park along the sidewalk. Two men were in the Saturn, identified by Tomlin at trial as Jimenez-Gutierrez, the driver, and Romero-Arellano, the passenger. Neither man got out of the car. A short time later the Saturn began to drive "slowly," occasionally stopping, making two or three circles around the area. Tomlin began to follow the Saturn. He also called Officer Patrick Gillette, who was in uniform in a marked police vehicle, and requested that he become involved and, were he to observe a traffic violation, effect a traffic stop.

Gillette drove to the Townview area, located the Saturn, and after a time saw it cross over the limit line into a bicycle lane and also change lanes without signaling. Gillette signaled for the Saturn to pull over, which it did. Gillette got out of his patrol car and began to approach the Saturn; as he reached the right rear quarter panel, the Saturn suddenly sped off. Gillette ran back to his patrol car and began pursuit of the Saturn, with the emergency lights and siren on. The chase reached speeds of 60 to 70 miles per hour, with the Saturn running red lights and crossing over a double yellow line, forcing other drivers to take evasive action. The Saturn was "all over the road."

The pursuit continued along Bennett Valley Road, a winding road, and along the way Gillette saw the passenger throw "at least two" objects out of the window. They "looked like something wrapped in clear plastic of a white-ish type color," and Gillette suspected they contained narcotics. Gillette radioed other officers what he saw, and continued his pursuit for another half-mile, when the Saturn abruptly pulled over to the side of the road. Gillette waited for backup officers to arrive, at which point he ordered the occupants out of the Saturn, one at a time. The first out was Jimenez-Gutierrez, the driver, followed by Romero-Arellano.

Tomlin had seen the Saturn initially pull over when Gillette activated his emergency lights, and also saw it speed away as Gillette approached. Tomlin joined in the pursuit (though not at high speed), and ultimately pulled up alongside Gillette's patrol car when the Saturn finally stopped. Tomlin later searched the Saturn at the scene, and found $910 in the glove compartment.

Meanwhile, Gillette returned to the spot where he saw the objects thrown from the Saturn, and "immediately" located three plastic bags containing a

crystal-like white powder some 10 to 15 feet from the road. The bags were free of debris or dirt and were not damp from condensation. Gillette later turned the items over to Tomlin.

Undercover Detective Jessie Cude had heard the radio report about the items thrown from the Saturn, and from the point where the Saturn stopped he walked backwards along Bennett Valley Road. About a quarter-mile back, Cude found on the side of the road a digital scale and five empty plastic sandwich bags rolled up in a ball.

At the police station Tomlin and Cude weighed the three packages at 29.7 grams, 6.5 grams, and 4.6 grams, for a combined weight of 40.8 grams, approximately an ounce and a third. Chemical analysis of two of the bags showed they contained methamphetamine; the third bag was never tested. Qualified as an expert witness, Tomlin gave the opinion that the methamphetamine was possessed for sale, an opinion based on the quantity of methamphetamine, the amount of cash in the Saturn, the scale and drug packaging apparently thrown from the Saturn, and other factors.

### The Trial

The above facts were presented to the jury over three days, October 18, 22, and 23, 2007. The prosecution gave its closing argument on the morning of October 26. The court then gave its brief concluding instructions and placed the matter in the hands of the jury. This was at 9:45 a.m. At 10:32 a.m. the jury requested two exhibits, which the court agreed to provide. By 11:41 a.m. the jury had reached its verdicts.

### ANALYSIS

  I.  *The Trial Court Did Not Abuse Its Discretion in Denying the Motion to Impeach Officer Tomlin*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

  II.  *The Jury Instructions Properly Referred to the Prosecution as "the People"*

  A.  *The Background and the Issue*

Defendants' special instruction No. 1 requested that all CALCRIM instructions be modified and that the word "People" be changed to "prosecution,"

---

[*]See footnote, *ante,* page 58.

"government," or "state." The trial court refused. Defendants contend that this was error, violating their state and federal substantive and procedural due process rights.

Defendants' argument on this point is put forth by Jimenez-Gutierrez, in an opening brief with 27 pages of vigorous, and at times colorful, argument. That argument asserts four separate bases contending that referring to "the People" is wrong, two of which have multiple subparts. The brief also has an appendix containing excerpts from cases from four other states (Michigan, Illinois, Colorado, and New York) and from the New York Criminal Jury Instructions.

The Attorney General's response is set forth in far fewer pages, likewise vigorous, though less colorful. That response begins with this succinct statement: "This argument is meritless and has been rejected by our courts in *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1068 [47 Cal.Rptr.3d 467, 140 P.3d 775], *People v. Whisenhunt* [(2008) 44 Cal.4th 174 [79 Cal.Rptr.3d 125, 186 P.3d 496]], and *People v. Black* (2003) 114 Cal.App.4th 830 [7 Cal.Rptr.3d 902]."

Defendants reply this way: "There is no discussion in *Black* of jury instructions or the manner in which the prosecutor should be identified in such instructions. Nor do the single sentence affirmations of *Black* in the laundry list of rejected claims at the ends of the death penalty case opinions issued by the Supreme Court purport to widen the scope of that analysis. None of those cases discussed anything beyond the blanket demand made by the defendant in *Black* that the prosecution be precluded from being identified as 'The People' or 'The People of the State of California' in any manner at any time in the trial." (Fn. omitted.)

■ Jimenez-Gutierrez's dismissive descriptions of *Lewis and Oliver* and *Whisenhunt* are risky, as the holdings of those cases would be binding on us. "Under the doctrine of *stare decisis*, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction. . . . The decisions of [the California Supreme Court] are binding upon and must be followed by all the state courts of California. . . . Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction." (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) We hold that we are so bound, that the Supreme Court has "declared" that it is proper to use "the People" in jury instructions.

B. *The Issue Has Been Decided by the Supreme Court*

■ *Lewis and Oliver* held that "[t]o refer to the complaining party as 'The People' does not violate due process or other constitutional principles.

(See *People v. Black*[, *supra,*] 114 Cal.App.4th 830, 832–834 . . . .)" (*People v. Lewis and Oliver, supra,* 39 Cal.4th at p. 1068 (*Lewis and Oliver*).) Criminal cases are brought in the name of "the people." (Pen. Code, § 684.) Trial courts refer to "the People." And, of course, jury instructions refer to "the People." So, we conclude, the Supreme Court has determined the issue, as confirmed by the appellate record in *Whisenhunt.*

By notice of August 27, 2008, we advised the parties that we were considering taking judicial notice of Argument No. XXI in Whisenhunt's opening brief to the Supreme Court, and requesting the parties' positions on that subject. We have received and reviewed the response, and have concluded that judicial notice is appropriate, and so advised the parties by order dated October 29, 2008.

Argument No. XXI in Whisenhunt's opening brief began as follows: "Throughout appellant's trial, the prosecution referred to himself as representing 'The People.' [Citations.] The trial court also repeatedly referred to the prosecution as 'the People' [citations] and to the case against appellant as 'the People' versus Michael McCrea Whisenhunt [citations]. All the exhibits introduced by the prosecution were called 'People's Exhibits.' The trial court also read the jurors instructions which referred to the prosecution as 'the People.' [Citing seven instructions.] [¶] It is fundamentally unfair and a violation of the Due Process Clause of the state and federal constitutions to refer to the prosecution as 'The People' . . . . [Citations.]"

Whisenhunt's argument was premised on *five different* references to "the People," the last of which was that the instructions referred to "the People," the argument defendants assert here.

Against that background, the unanimous Supreme Court opinion distilled Whisenhunt's argument, and its lack of merit, this way: "Defendant contends the prosecution's reference to itself as representing 'the People' violated his right to due process and other constitutional rights. We have previously rejected such claims and do so again here. ([*Lewis and Oliver, supra,*] 39 Cal.4th 970, 1068 . . . ; see also *People v. Black*[, *supra,*] 114 Cal.App.4th 830, 832–834 . . . .)" (*People v. Whisenhunt, supra,* 44 Cal.4th at p. 223.)

■ It is true, as defendants assert, that " 'an opinion is not authority for a proposition not therein considered.' " (*People v. Scheid* (1997) 16 Cal.4th 1, 17 [65 Cal.Rptr.2d 348, 939 P.2d 748].) However, the case cited in *Schied* also states that "[l]anguage used in any opinion is . . . to be understood in the light of the facts and the issue then before the court . . . ." (*Ginns v. Savage*

(1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].) (Also see *Stewart v. Stewart* (1926) 199 Cal. 318, 327 [249 P. 197] [subject "elaborately treated" in briefs of counsel]; *Western Landscape Construction v. Bank of America* (1997) 58 Cal.App.4th 57, 61 [67 Cal.Rptr.2d 868] ["To determine the precedential value of a statement in an opinion, the language of that statement must be compared with the facts of the case and the issues raised"].)

In sum, we conclude that defendants' argument has been rejected by the law declared by the Supreme Court. But even if it were not, defendants would still not prevail, because referring to "the People" in the jury instructions is not error.

### C. *The Instructions Were Proper*

The first Constitution for California was adopted on November 13, 1849, prior to statehood. (Deering's Ann. Cal. Const. (1999 ed.) Foreword, p. v.) It was amended in 1862, following which article VI, section 18 provided that "The style of all process shall be: 'The People of the State of California,' and all prosecutions shall be conducted in their name and by their authority." (Deering's Ann. Cal. Const., *supra*, appen. I, art. VI, § 15, p. 494.)

This language was deleted by the massive 1966 constitutional revision, but it was simultaneously enacted without change as Government Code section 100, subdivision (b) (see Stats. 1966, 1st Ex. Sess., ch. 161, § 8, pp. 710, 713, 720), where it remains. And the same thought finds expression in Penal Code section 684, which was enacted in 1872: "A criminal action is prosecuted in the name of the people of the State of California, as a party, against the person charged with the offense."

Necessarily acknowledging all this, defendants concede that the provisions authorize a criminal case to be *brought* in the name of "the People." But apparently that is all. Defendants point to the language in Penal Code section 1096, which provides in pertinent part as follows: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his or her guilt is satisfactorily shown, he or she is entitled to an acquittal, but the effect of this presumption is only to place upon *the state* the burden of proving him or her guilty beyond a reasonable doubt." (Italics added.) Focusing on the italicized "the state," defendants assert several arguments why use of "the People" in jury instructions is error. None of the arguments is persuasive.

Defendants begin by asserting that use of "the People" in jury instructions "is a recent amendment of historical terminology." In claimed support, defendants quote a 2005 comment from the CALCRIM task force as to how the term came to be included in the instructions.[4] Defendants' version of history is myopic.

As early as 1865, the Supreme Court dealt with an instruction (proferred by the defendant, no less) referring to "the People." (*People v. Kelly* (1865) 28 Cal. 423, 427.)[5] In 1894 the Supreme Court stated that "[i]n the prosecution of criminal cases [the district attorney] acts by the authority and in the name of the people of the state." (*County of Modoc v. Spencer* (1894) 103 Cal. 498, 501 [37 P. 483].) Four years later that court rejected a claim of misconduct by the district attorney, holding that "[t]here is nothing in the point of the alleged misconduct of the district attorney in his closing address to the jury. By the language objected to he merely used well-known historical incidents to illustrate his argument. The court had told the jury, in response to certain other objections made by appellant's counsel while the district attorney was addressing them: 'If counsel for the people go beyond the evidence, or beyond a rational discussion of the evidence, it is your duty, gentlemen of the jury, to disregard it.' " (*People v. Barthleman* (1898) 120 Cal. 7, 15–16 [52 P. 112].)

The very first edition of CALJIC, published in 1946, referred to "the People" in various instructions. (See, e.g., Nos. 1, 3, 28, and 51B.)[6] Numerous instructions in the last edition of CALJIC referred to "the People," including, for example, CALJIC Nos. 1.00, 1.06, 2.11.5, 2.28, 2.61 (twice), 2.90, and 2.91. CALJIC No. 2.90 is particularly instructive. It is the instruction on reasonable doubt, and as such is based on Penal Code section 1096, the very statute on which defendants' argument is premised. And, as the Supreme Court has noted, "CALJIC No. 2.90 is constitutional as currently

---

[4] The comment is this: "In response to the first release in June 2000, the California District Attorneys Association expressed its disapproval of the term 'prosecutor' in the instructions. The subcommittee subsequently changed the term to 'the People.' After the subcommittee implemented this change, members of the criminal defense bar disapproved. The subcommittee carefully considered their concerns, but noted that Penal Code section 684 expressly states that '[a] criminal action is prosecuted in the name of the people of the State of California . . . .['] []The subcommittee therefore retained 'the People.' " (Judicial Council Task Force on Criminal Jury Instructions, Report (Aug. 26, 2005) p. 12; <http://www.courtinfo.ca.gov/jc/documents/reports/0805item4.pdf> [as of Feb. 11, 2009].)

[5] The instruction was held properly rejected because it was redundant.

[6] Other original CALJIC instructions referred to the state (No. 21) and the prosecution (No. 23).

phrased. (*People v. Lewis* (2001) 25 Cal.4th 610, 651–652 [106 Cal.Rptr.2d 629, 22 P.3d 392].)"[7] (*Lewis and Oliver, supra*, 39 Cal.4th at p. 1068.)

Defendants next argue that only four other states refer to criminal cases as being brought by "the People": Illinois, Colorado, Michigan, and New York. And, defendants go on, in all of those states the jury instructions refer to the "prosecuting party . . . [as] 'the state' or 'the prosecution' . . . or expressly advises the jury that 'the People' actually means 'the government.' " Defendants end this argument with heavy reliance on the New York procedure, which defendants describe as follows: "In New York, where the term 'The People' is specified as the title of the prosecuting entity, the standard instructions given at the end of the trial in New York refer to 'the prosecutor,' [citation] but most of the criminal instructions, which appear to [have] been crafted pursuant to a process similar to our own CALCRIM Task Force, refer to the prosecuting entity as the People. However, the introductory statement to the jury in New York includes the instruction that: [¶] The name of the case is the 'People of the State of New York against (*defendant's name*[*s*]).' The words, People of the State of New York, in that title mean the government of the State of New York. ([NY Instn.] Title of Action)."

Satisfied with the New York approach, defendants must necessarily be satisfied with CALCRIM No. 100, an instruction that can be given "before or after voir dire." CALCRIM No. 100 begins as follows: "[Jury service is very important and I would like to welcome you and thank you for your service.] Before we begin, I am going to describe for you how the trial will be conducted, and explain what you and the lawyers and I will be doing. When I refer to 'the People,' I mean the attorney[s] from the (district attorney's office/city attorney's office/office of the attorney general) who (is/are) trying this case on behalf of the People of the State of California. When I refer to defense counsel, I mean the attorney[s] who (is/are) representing the defendant[s], [insert names of defendants]."[8] This instruction measures up to defendants' argument "that 'the People' means 'the government.' "

Moreover, and as defendants concede, the title of this case—designating the complaining party as "the People of the State of California"—appears to

---

[7] Admittedly, the constitutional attack on CALJIC No. 2.90 in *Lewis*, the case cited in *Lewis and Oliver*, was not based on the definition of "reasonable doubt." We do not know the basis of the constitutional attack in *Lewis and Oliver, supra*, 39 Cal.4th 970.

[8] The bench notes to this instruction say, "There is no sua sponte duty to give an instruction outlining how the trial will proceed. This instruction has been provided for the convenience of the trial judge who may wish to explain the trial process to jurors. (See California Rules of Court, rule 2.1035.)" We are unable to tell from the record whether any such pretrial guidance was provided here, as the early voir dire proceedings were not reported.

have been mentioned to the jury just once prior to the jury's verdict, at the reading of the information. It was immediately followed by the clarifying advisement that the defendants stood "accused *by the district attorney*." Moreover, at least one instruction referred to "the prosecution." In any event, defendants present no authority demonstrating the reason(s) why some states choose one term and some another, certainly nothing demonstrating that a particular term was chosen because of some due process right of defendants.

Defendants next assert, in arguments that run some 10 pages, that referring to "the People" tends to "bias the jury against the defendant for no valid reason." Elaborating, defendants assert that in a "purely logical world," the terms used would not matter. However, they go on, "juries are composed of humans, not Vulcans, and humans are not strictly logical." Thus, defendants state, in boldface: "It's not what you say, it's what people hear." This, it turns out, is the subtitle of a book by Frank Luntz entitled "Words That Work." Defendants rely heavily on Mr. Luntz, a "political scientist, pollster, and expert on testing language," from whose work defendants reach two claimed conclusions: (1) a label which creates " 'identification' between the listener and the speaker is the strongest form of rhetorical persuasion"; and (2) "repetition of the identification of the prosecutor as 'The People' reinforces the sense of 'identification' between the jury and the prosecution." Defendants' rhetoric is not persuasive. The case law is.

A recent case from the Fifth Appellate District bears directly on the issue. The case is *People v. Ibarra* (2007) 156 Cal.App.4th 1174 [67 Cal.Rptr.3d 871], where defendant's penultimate argument, and its disposition, was described this way: "Fifth, Ibarra argues that the definition in CALCRIM No. 100 of 'the People' as 'the attorney from the district attorney's office who is trying this case on behalf of the People of the State of California' improperly favors the prosecution. With commendable candor, he acknowledges that *People v. Black*[, *supra*,] 114 Cal.App.4th 830 . . . rejected that challenge. So do we." (*Ibarra*, 156 Cal.App.4th at pp. 1181–1182.) This, of course, is the issue defendants raise here.

██ Particularly persuasive, though not dealing with the identical issue, is *People v. Black, supra*, 114 Cal.App.4th 830 (*Black*). The claim in *Black* was that defendant's state and federal constitutional rights were violated because the trial court "erred prejudicially by denying his pretrial motion to preclude the prosecution from being called, 'The People' or 'The People of the State of California.' " (*Black*, at p. 832.) The Court of Appeal rejected the argument: "We conclude that this contention, although raised increasingly often, lacks merit. California statutes mandate that prosecutions be conducted in the name

of 'The People of the State of California,' and defendant has failed to show that the applicable statutes are unconstitutional on their face or as applied here." (*Ibid.*)

Supporting such conclusion, the *Black* court said: "Defendant asserts that calling the prosecution 'The People' violates the federal and state constitutional guarantees of a fair trial by jury and due process of law. (U.S. Const., 5th, 6th & 14th Amends.; Cal. Const., art. I, §§ 15 & 16.) However, he fails to cite any authority so holding. He merely notes that most other states style the prosecution, 'The State' or 'the Commonwealth' and that the federal district courts style the prosecution 'The United States,' then concludes: 'Such consensus indicates California's practice violates due process.' On the contrary, even if California's practice were unique, that fact would not tend to prove a constitutional violation. (See, e.g., *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1515–1516 [84 Cal.Rptr.2d 638].)" (*Black, supra,* 114 Cal.App.4th at p. 833.) The factors cited in *Black* apply equally to defendants here, who likewise cite "no authority." Or anything else.

In rejecting defendant's argument in *Black*, Justice Sims observed that "[t]he signatories to this opinion have collectively served many decades on the trial and appellate benches and have participated in the adjudication of hundreds upon hundreds of criminal cases. [Citation.] We are not aware of a single instance in which the fact that a prosecution was brought in the name of 'The People' has had any influence whatsoever on the decision of a jury with respect to a defendant's guilt or innocence. There is simply no unfairness." (*Black, supra,* 114 Cal.App.4th at p. 833.)

Taking issue with this observation, defendants add this flourish: "The problem with that factual finding is that *there is absolutely no way that the justices who stated it can know if it is true or not*—regardless of how many cases they may have been involved in adjudicating at the trial or appellate level, and how great their powers of observation might be. And that is because every one of those cases involved a trial which *was* brought in the name of 'The People.' If there were instances where using different nomenclature would actually have made a difference there's no way they could possibly know that. The justices of the *Black* court have no means of comparing one set of terminology with another, and no way of assessing—based on the experience they cite as the sole basis for their decision—whether the use of the challenged terminology harms the fact-finding mission of a criminal trial or not. The holding of *Black* is little more than a judicial version of the parental standby: 'Because I said so.' "

Defendants' criticism, however misplaced it is as against the court, can properly be leveled against them: their argument is essentially "because they say so"—nothing more than rank speculation. Specifically, defendants offer nothing to the contrary, no evidence of any kind that referring to "the People" has any effect on jurors. Defendants cite to no empirical data; no study, sociological or otherwise; no commentary; no research; no law review articles; nothing supporting the claim that reference to "the People" in jury instructions has ever had any effect on a jury. Our independent research, scouring the library and all available reference works, produces the same yield: nothing.

■ Finally, looking at the instructions to the jury in their entirety, it is clear that defendants were not prejudiced. The trial court properly instructed the jury on the presumption of innocence and the prosecution's burden of proving defendants guilty beyond a reasonable doubt. The trial court instructed that both sides were entitled to a fair trial and had a right to expect a just verdict regardless of the consequences. We presume jurors are intelligent people capable of understanding the instructions given. (*People v. Mickey* (1991) 54 Cal.3d 612, 671 [286 Cal.Rptr. 801, 818 P.2d 84].)

We conclude that there is no error in referring in the instructions to "the People." But even if there were, in light of the overwhelming evidence of defendants' guilt, it is not reasonably probable the jury would have reached a different outcome had the court referred to the prosecution some other way. (See *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Such error would be harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].)

We close with a final observation. The issue before us is straightforward: whether it was proper to refer in the jury instructions to "the People." We hold that it was. No argument was made that the prosecutor placed any emphasis on representation of "the People," no contention that there was undue focus on, or repetition about, "the People"—in short, no contention that, save for the reference in the instructions, "the People" was in any way misused. So, our holding is what it is, and we go on record as saying that the principle we confirm here today is not to be interpreted as a license for a zealous prosecutor to somehow use our opinion as justifying anything other than the use of appropriate conduct to see that justice is done. (See *Berger v. United States* (1935) 295 U.S. 78 [79 L.Ed. 1314, 55 S.Ct. 629].)

## DISPOSITION

The judgments of conviction are affirmed.

Kline, P. J., and Lambden, J., concurred.

A petition for a rehearing was denied March 4, 2009, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied May 20, 2009, S171333. George, C. J., did not participate therein.